Garry, J.
The parties are the parents of a child (born in 2008). Petitioner (hereinafter the father) was incarcerated shortly before the child was born and is serving a prison term of 31/2 to 7 years. A 2008 order awarded sole custody to respondent (here *1086 inafter the mother) and provided the father with visitation as the parties might agree. In 2011, the father commenced three modification proceedings, seeking initially to compel the mother to permit and pay for his telephone contact with the child, and subsequently making additional requests including scheduled visits with the child at the prison. Following a fact-finding hearing, Family Court denied the father’s request for scheduled visits and continued the prior provision for visitation as agreed upon between the parties. The court modified the prior order by permitting the father to have reasonable telephone contact with the child at no cost to the mother, allowing the father to send up to four letters to the child per month, directing the mother to send a photograph of the child to the father each month, and directing the father to engage in domestic violence counseling before any unsupervised visits with the child after his release. The father appeals.
A party seeking to modify a visitation order must show a change in circumstances resulting in a need for the modification to ensure the best interests of the child (see Matter of Bunger v Barry, 88 AD3d 1082, 1082 [2011]). Here, the father met this standard by revealing changes following entry of the 2008 order that had affected his ability to maintain a meaningful relationship with the child. During the father’s initial confinement in a county jail, the mother had brought the child for weekly visits. Thereafter, the parties terminated their previous romantic relationship and the father was transferred to a state prison facility located a significant distance from the mother’s home.* The mother then stopped transporting the child for visits, and the father has had no subsequent contact with the child in person or by telephone.
“Visitation with a noncustodial parent is presumed to be in a child’s best interests even when the parent is incarcerated” (Matter of Chambers v Renaud, 72 AD3d 1433, 1434 [2010] [citation omitted]; see Matter of Flood v Flood, 63 AD3d 1197, 1198 [2009]); however, the central issue is the best interests of the child, and visitation “need not always include contact visitation at the prison” (Matter of Cole v Comfort, 63 AD3d 1234, 1235 [2009], lv denied 13 NY3d 706 [2009]; see Matter of Conklin v Hernandez, 41 AD3d 908, 910 [2007]). Here, Family Court’s findings regarding the child’s very young age, the parties’ severely limited financial resources, and the great distance the child would have to travel for visitation are well supported in *1087 the record. We note in particular that neither party was able to arrange or pay for transportation. Thus, a sound and substantial basis exists to support Family Court’s determination that scheduled visits would not be in the child’s best interests, and we find no reason to disturb it (see Matter of Smith v Smith, 92 AD3d 791, 792 [2012]; Matter of Goldsmith v Goldsmith, 68 AD3d 1209, 1210 [2009]; Matter of Williams v Tillman, 289 AD2d 885, 885 [2001]). Nor did Family Court err in limiting the father’s correspondence with the child to four letters per month, given his testimony that he was seeking to send “a couple [of letters] a month” and had previously sent approximately one letter each month. Further, in view of the mother’s testimony as to derogatory remarks contained in the father’s prior correspondence and previous incidents of domestic violence, the court properly directed the father to include “only material directed at the child and no comments to or about the mother.”
Family Court’s direction that the father receive domestic violence counseling before having unsupervised contact with the child after his release from prison must be reversed. While a court may direct a parent to submit to treatment or counseling as a component of visitation, it may not impose such a requirement as a condition of future access to the child (see Matter of Smith v Dawn F.B., 88 AD3d 729, 730 [2011], lv dismissed 18 NY3d 855 [2011]; Matter of Lane v Lane, 68 AD3d 995, 997-998 [2009]; compare Matter of Remillard v Luck, 2 AD3d 1179, 1180 [2003]). Additionally, the father correctly notes that his request for medical and educational information was not addressed. As there was no showing that it would not be in the child’s best interests for the father to have such information, we modify the order to afford the father access to the child’s medical and school records, at his own expense, and to direct the mother to advise him of any significant changes in the child’s health such as hospitalizations or major injuries (see Matter of Graves v Stockigt, 79 AD3d 1170, 1171-1172 [2010]; compare Matter of Flamio v Flower, 46 AD3d 1265, 1265 [2007]).
Finally, contrary to the father’s argument, there was no request for custody modification — nor in the circumstances presented, could such a request have been entertained. As there was no showing that the failure to reference the search required by Family Ct Act § 651 (e) in the order was of any significance, we decline to address this issue.
Mercure, J.E, Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by (1) reversing so much thereof as directed petitioner to engage in education and therapy pertaining to domestic violence as condi *1088 tions precedent to unsupervised visitation with the child following his release from prison, and (2) directing that respondent shall advise petitioner of significant changes in the child’s health and petitioner shall have access to the child’s medical and educational records, at his own expense, and, as so modified, affirmed.

 The father was housed in Attica Correctional Facility in Wyoming County when he commenced these proceedings and had been transferred to Albion Correctional Facility in Orleans County at the time of the fact-finding hearing.