■ In the Matter of JOHN NEWMAN, Appellant, v JOANN C. DOOLITTLE, Respondent, and JAMMIE DOOLITTLE-WEISS, Also Known as JAMMIE M. GOODWIN, Respondent. (And Another Related Proceeding.) [56 NYS3d 385]—

Garry, J. Appeal from an order of the Family Court of Broome County (Pines, J.), entered May 23, 2016, which, among other things, dismissed petitioner's application, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of visitation.

Petitioner (hereinafter the father) and respondent Jammie Doolittle-Weiss (hereinafter the mother) are the parents of three children (born in 2005, 2006 and 2007). By an order entered in December 2011, respondent Joann Doolittle (hereinafter the grandmother) was granted sole custody of the children and the father was granted supervised visitation and reasonable phone contact. At the time of the 2011 order, the father was incarcerated upon convictions for criminal sexual act in the third degree, sexual abuse in the first degree and rape in the third degree. The father was released on parole in August 2013. He absconded from parole supervision and was subsequently reincarcerated in January 2014. In January 2016, the father filed a petition seeking to enforce the 2011 order and to modify the visitation schedule to include monthly visits while he is in prison.* Thereafter, the mother filed a petition for custody. In May 2016, following a combined fact-finding hearing, Family Court, among other things, granted joint custody to the mother and the grandmother and primary physical custody to the mother, and suspended the father's visitation rights until he is able to show a substantial change in circumstances. The father appeals, challenging only the suspension of visitation.

As the party seeking to modify visitation, it was the father's burden to first demonstrate a change in circumstances since

---

* The father testified that he expected to be released on parole in January 2017.

the entry of the 2011 order, and if this burden was met, then demonstrate that modification of the visitation order is in the children's best interests (*see Matter of William O. v John A.*, 148 AD3d 1258, 1259 [2017], *lv denied* 29 NY3d 908 [2017]; *Matter of Alan U. v Mandy V.*, 146 AD3d 1186, 1187 [2017]; *Matter of Tina RR. v Dennis RR.*, 143 AD3d 1195, 1197 [2016]). The 2011 order provided the father with two supervised visits per year. The father alleged a change in circumstances based upon the cessation of this visitation and the resulting impact on his relationship with the children. The father testified that the grandmother brought the children to visit him in December 2011, and Family Court credited the grandmother's testimony that she also brought the children for two visits in 2012. It was undisputed that all in-person visitation ceased after the father was released on parole in August 2013 and absconded, was captured and reincarcerated in January 2014, and failed to inform the grandmother of his location. There was thus a demonstrated change in circumstances, and thereafter Family Court properly proceeded with a best interests analysis (*see Matter of Joshua C. v Yolanda C.*, 140 AD3d 1213, 1214 [2016]; *Matter of Ruple v Harkenreader*, 99 AD3d 1085, 1086 [2012]).

Visitation with a noncustodial parent, even when he or she is incarcerated, is presumed to be in the best interests of the child. However, this presumption can be rebutted by a showing that visitation would be harmful to the child or that the parent has forfeited his or her visitation rights (*see Matter of Granger v Misercola*, 21 NY3d 86, 90 [2013]; *Matter of Owens v Chamorro*, 114 AD3d 1037, 1039 [2014]; *Matter of Joshua SS. v Amy RR.*, 112 AD3d 1159, 1160 [2013], *lv denied* 22 NY3d 863 [2014]). Recognizing that the matter of visitation rests within the sound discretion of Family Court, as guided by a best interests analysis, we will not disturb its determination where it is supported by a sound and substantial basis in the record (*see Matter of Samuels v Samuels*, 144 AD3d 1415, 1415-1416 [2016]; *Matter of Dibble v Valachovic*, 141 AD3d 774, 775 [2016]).

Here, the father testified that increased visitation during his incarceration would be in the children's best interests so that they could have "some kind of rapport or some kind of knowledge, at least know what [their father] looks like." Significantly, however, the record reveals that it was the father who had previously impeded visitation. Family Court credited the grandmother's testimony that she arranged for the children to visit the father once in 2011 and twice in 2012. The father asserts that he unsuccessfully attempted to arrange additional

visitation thereafter, and that, upon his release on parole, he was prohibited from having contact with anyone under the age of 18 without permission. However, it is undisputed that the father absconded from parole almost immediately following his release, and later failed to inform the grandmother of his whereabouts for roughly two years after his reincarceration. It is undisputed that the father called the grandmother shortly after he absconded, but declined to speak with the children, and the court credited the grandmother's testimony that the father then indicated that he did not want anything to do with the children. The father acknowledged that since his reincarceration in 2014, he has written to the children on just three occasions, and has spoken with them twice on the phone. The father's "failure to avail himself . . . of opportunities for visitation over a lengthy period of time is appropriately taken into account in considering whether visitation is appropriate" (*Matter of Owens v Chamorro*, 114 AD3d at 1039; *see Matter of Brown v Terwilliger*, 108 AD3d 1047, 1048 [2013], *lv denied* 22 NY3d 858 [2013]; *Matter of Cole v Comfort*, 63 AD3d 1234, 1236 [2009], *lv denied* 13 NY3d 706 [2009]). Given these circumstances, the father's status as a level three sex offender and the children's expressed desire to cease visitation, we find the court's determination to suspend the father's visitation rights to be supported by a sound and substantial basis in the record (*see Matter of Joshua SS. v Amy RR.*, 112 AD3d at 1160; *Matter of VanBuren v Assenza*, 110 AD3d 1284, 1284 [2013]; *Matter of Wise v Burks*, 61 AD3d 1058, 1058-1059 [2009]).

Finally, we reject the father's contention that a *Lincoln* hearing should have been conducted. Although a *Lincoln* hearing is often a preferred method of ascertaining a child's wishes, it is not mandatory, particularly where, as here, the attorney for the child communicates the child's wishes to the court (*see Matter of Leary v McGowan*, 143 AD3d 1100, 1103 [2016]; *Matter of Merwin v Merwin*, 138 AD3d 1193, 1195 [2016]).

Peters, P.J., Lynch, Clark and Aarons, JJ., concur. Ordered that the order is affirmed, without costs.