Matter of Michael P. v Joyce Q. (2021 NY Slip Op 01169)





Matter of Michael P. v Joyce Q.


2021 NY Slip Op 01169


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

529081

[*1]In the Matter of Michael P., Appellant,
v
Joyce Q., Respondent, et al., Respondents. (Proceeding No. 1.)
In the Matter of Joyce Q., Respondent,
v
Michael P., Appellant, et al., Respondents. (Proceeding No. 2.)

Calendar Date: January 5, 2021

Before: Garry, P.J., Clark, Aarons, Pritzker and Colangelo, JJ.


Michelle I. Rosien, Philmont, for appellant.
Tully Rinckey PLLC, Vestal (Christian J. Root of counsel), for Joyce Q., respondent.
Mark A. Schaeber, Liverpool, attorney for the child.



Pritzker, J.
Appeals from a decision and an order of the Family Court of Cortland County (Campbell, J.), entered February 26, 2019 and May 8, 2019, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Michael P. (hereinafter the father) and respondent Mickayla K. (hereinafter the mother)[FN1] are the parents of a son (born in 2014). Joyce Q. (hereinafter the aunt) is the mother's aunt with whom the child has resided since birth. Pursuant to a May 2016 order entered upon the mother's default, the father and the aunt were awarded joint legal custody, with the aunt having physical placement of the child. The order further provided that the father was entitled to visitation as agreed upon by the parties, the father and the aunt were authorized to consent to appropriate medical care for the child and the father and the aunt were authorized to have equal access to all of the child's records. Approximately one year thereafter, the father commenced the first of these proceedings seeking to modify the May 2016 order by awarding him increased parenting time, including overnight weekend visits, alleging that he is now a stay at home father and that the aunt prevented substantial visitation between him and the child.
The aunt then commenced the second of these proceedings, seeking to modify the May 2016 order by awarding her sole legal and physical custody of the child due to, among other things, the father's inability to understand the child's autism diagnosis, the father's lack of interaction during visits with the child and the father's severe untreated mental health concerns. Following a fact-finding hearing,[FN2] Family Court issued a decision in February 2019 granting the aunt's petition and dismissing the father's petition. The court found, among other things, that extraordinary circumstances existed as there are concerns with the father's mental health, his failure to address the child's special needs and the duration of time the child has lived with the aunt. The court also found that it is in the child's best interests for the aunt to have sole legal and physical custody of the child, with a schedule of visitation to the father. An order was entered in May 2019 reflecting the court's decision. The father appeals from the February 2019 decision and the May 2019 order.[FN3]
Family Court's determination that extraordinary circumstances exist to support a custody award to the aunt is supported by a sound and substantial basis in the record. It is well settled that a parent's right to custody of his or her child is superior to that of all others absent a showing of "surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or 'other like extraordinary circumstances'" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017], quoting Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]). "'The extraordinary circumstances analysis [*2]must consider the cumulative effect of all issues present in a given case, including, among others, the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1304 [2017], quoting Matter of Peters v Dugan, 141 AD3d 751, 753 [2016]). The nonparent bears the burden of proving extraordinary circumstances (see Matter of Marcia ZZ. v April A., 151 AD3d at 1304; Matter of Thompson v Bray, 148 AD3d 1364, 1365 [2017]). "Once extraordinary circumstances have been established, Family Court may then proceed to the issue of whether an award of custody to the nonparent, rather than the parent, is in the child's best interests" (Matter of Donna SS. v Amy TT., 149 AD3d at 1212-1213).
At the fact-finding hearing, Jaye Hale, a special education teacher and special instructor for early intervention services, testified that the child has been diagnosed with autism and that she provided special instruction to him from August 2016 to August 2017 at the aunt's home. When Hale was working with the child, he communicated very little and was not reaching typical milestones for a two or three year old. Hale testified that, among other things, the child has sensory disorders that make it difficult for him to touch objects and he is sensitive to loud noises. Hale also testified that the child regularly exhibits self-abusive behaviors when he becomes frustrated and, when the child is hurt or in danger, he is unable to communicate that to anyone. Hale's testimony also established that the child is very bonded to the aunt, who attended all of Hale's sessions with the child and that, from what Hale has observed, the aunt is very committed to the child, making special arrangements and taking precautions so that the child is able to go into the community. Hale also explained that the aunt's house is very "oriented" for the child and that, since the child gets frustrated and upset when outside of the aunt's house, the person responsible for the child would need to be very attentive and supervise him at all times. Hale also testified that the father attended her sessions on a few occasions, but he did not interact with the child. The child's occupational therapy services provider also testified and, overall, her testimony regarding the child's diagnosis and challenges corroborated Hale's testimony. The occupational therapist similarly described the bond between the aunt and the child as very loving and explained that the child needs constant "supervision and assistance for most self-care activities but definitely for the safety factor."
The father testified that, in the two years prior to the fact-finding hearing, he lived at approximately three different residences. The father's residence at the time of the hearing had two bedrooms, one of which is his and the other is [*3]shared by his three other children (not including the child). The father's testimony included some instances that reflected poor supervision of his other children, including an incident one week prior to the hearing when his three-year-old son (not the child) fell out of a go-cart that his older son was driving and his three-year-old son had to get stitches as a result. The father also testified that he has posttraumatic stress disorder and admitted to more than one incident of self-harm. Additionally, the father admitted to taking steroids in the recent past and that, approximately seven years prior, he was arrested for intentionally crashing his car into his ex-wife's car after finding her with another man.
As to the child, the father testified that, in the last seven months, he has visited with the child every week, but some visits were cut short because the child "will feel like he doesn't want to be there." When asked about what medications the child is prescribed, the father stated that he did not know because he has always "been kept in the shadows," despite having open access to the child's medical records. Additionally, the father testified that he has never contacted the child's medical providers or attended any medical or therapy appointments. The father described that he wanted to gradually establish a relationship with the child so that he could eventually have him on overnights, but testified that he feels alienated by the aunt as she has denied him visitation. Specifically, the father testified that the aunt did not allow for parenting time outside of the established parenting schedule in the prior order despite him taking the initiative to invite the child, with appropriate notice to the aunt, to attend events on holidays or special occasions. The father also stated that, in terms of the child's autism diagnosis, he does not share the child's medical providers' opinions with regard to the child's diagnosis and treatments.
The aunt testified that the child has lived with her since he was born and that she has set up her home to accommodate his needs, including having an alarm system, locks on the cupboards, a set up for his therapy sessions and a trampoline and ball pit. The aunt stated that the child does not like to be touched and that he is very sensitive to odors and is a very picky eater. The aunt described how the child likes routine and will only go to the bathroom in one bathroom at her house. The aunt also explained that she has to pay attention to the child at all times as he does not have an appreciation for danger. The aunt explained that, when the child gets overwhelmed, he will hit his head as a coping mechanism. When asked about visitation with the father, the aunt stated that she told him that he could visit the child whenever he wants and that he usually comes twice a week and only observes the child play. She also testified that she has opened her house for visits and the father is more than welcome [*4]to come to her home whenever he wants. The aunt also stated that the child has never been away from her overnight and the longest time that he has spent away from her was only four or five hours.
Based on the foregoing, Family Court properly found that the aunt met her burden of establishing that extraordinary circumstances exist due to the length of time that the subject child has remained in her care, their strong bond, the lack of the father's initiative with respect to assuming primary parenting responsibilities and the father's mental health concerns (see Matter of Marcia ZZ. v April A., 151 AD3d at 1304; Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1104 [2015]; Matter of Pettaway v Savage, 87 AD3d 796, 799 [2011], lv denied 18 NY3d 801 [2011]; compare Matter of Thompson v Bray, 148 AD3d at 1365-1366). As to best interests, the testimony established that the subject child is very regimented and can easily become overwhelmed. The aunt has completely devoted her home to the subject child and has made everything in the house safe and tailored to his needs. Moreover, the aunt has never denied parenting time within the established parenting schedule set by the court and has even allowed for visitation with the child and the father on special occasions. Additionally, the father disagrees with the child's treatment and diagnosis or, at the very least, does not understand the scope of the child's autism diagnosis and sensory disorders. Based on the relevant factors, Family Court properly found that the child's best interests are served by an award of sole custody to the aunt (see Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1337 [2020]; Matter of Tasha AA. v Tammy DD., 178 AD3d 1306, 1310 [2019]).
As to the father's remaining argument that Family Court abused its discretion in deciding a visitation schedule, the testimony established that the best interests of the child lie in an established routine and careful supervision by the caretaker. Family Court awarded visitation to the father, more so than in the past, with the opportunity for expansion after six months of regular participation in the child's medical and therapy sessions. Thus, the court's award of visitation to the father is supported by a sound and substantial basis in the record (see Matter of Jemar H. v Nevada I., 182 AD3d 805, 807 [2020]; Matter of Dharamshot v Surita, 150 AD3d 1436, 1437 [2017]).
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the appeal from the February 26, 2019 decision is dismissed, without costs.
ORDERED that the May 8, 2019 order is affirmed, without costs.



Footnotes

Footnote 1: The mother did not participate in the proceedings at issue on appeal.

Footnote 2: A Lincoln hearing was neither requested nor held.

Footnote 3: The father's appeal from the February 2019 decision must be dismissed as no appeal lies from a decision (see CPLR 5512 [a]; Family Ct Act § 1112 [a]; Matter of Cassidy S. v Bryan T., 180 AD3d 1171, 1172 n 1 [2020]).