Matter of Nicole L. v David M. (2021 NY Slip Op 03487)





Matter of Nicole L. v David M.


2021 NY Slip Op 03487


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

527985
[*1]In the Matter of Nicole L., Respondent,
v
David M., Appellant. (And Four Other Related Proceedings.)

Calendar Date:April 29, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Maria Lally Clark, Valatie, for appellant.
Joseph Chicoine, Rensselaer, for respondent.
Sharon Lee McNulty, Albany, attorney for the child.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Columbia County (Koweek, J.), entered October 31, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for guardianship of the subject child.
Respondent (hereinafter the father) and Missy O. (hereinafter the mother) are the parents of a daughter (born in 2013). The mother died on December 2, 2017 from a drug overdose. On December 4, 2017, petitioner, the child's maternal aunt (hereinafter the aunt), and Frank N., the mother's former live-in boyfriend (hereinafter the former boyfriend) each petitioned Family Court for guardianship of the child. On the same day, the father filed a petition in Family Court seeking custody of the child. At the initial appearance on the petitions, it was determined that the child's birth certificate did not name a father. Thus, Family Court awarded temporary guardianship of the child to the aunt and appointed an attorney for the child.
Thereafter, the father filed a paternity petition in Family Court. On April 17, 2018, an order of filiation was entered, adjudging him to be the father of the child.[FN1] Shortly thereafter, the father filed an order to show cause seeking immediate custody. In May 2018, the aunt filed an amended guardianship petition alleging extraordinary circumstances. On May 21, 2018, Family Court denied the father's request for immediate custody, visitation and telephone contact with the child and continued temporary guardianship with the aunt. A fact-finding hearing was thereafter held on the respective petitions. Following the presentation of evidence by the aunt and the former boyfriend on their petitions, the father moved to dismiss their petitions, arguing that his right to custody was superior and they both failed to meet their burden of demonstrating extraordinary circumstances. The aunt, the former boyfriend and the attorney for the child opposed the motion, which was denied by Family Court. Ultimately, Family Court granted the aunt's petition and dismissed the former boyfriend's petition and all pending petitions of the father. The court, among other things, found the existence of extraordinary circumstances, as the father had abandoned the child, and that it was in the child's best interests for her to be placed away from the father and for the aunt to be appointed permanent guardian of the child. The father appeals.[FN2]
It is well settled that "[a] parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Karen Q. v Christina R., 170 AD3d 1446, 1447 [2019] [internal quotation marks and citation omitted]; see Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1383 [2019]). While there is no bright line test to determine extraordinary circumstances, "[e]xamples [*2]of behaviors that may, in the aggregate, rise to the level of extraordinary circumstances include allowing the child[] to live in squalor, failing to address serious substance abuse or mental health issues, instability in the parent's housing or employment situation . . . and other similar behaviors that reflect the parent's overall pattern of placing [his or] her own interests and personal relationships ahead of [the] child[]" (Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1103 [2015] [internal quotation marks and citation omitted]; see Matter of Philip UU. v Amanda UU., 173 AD3d at 1383-1384).
Initially, the father argues that Family Court erred when it denied his motion to dismiss the aunt's petition. "In determining the father's motion to dismiss, Family Court was required to accept the [aunt's] evidence as true, afford her the benefit of every favorable inference and resolve all credibility questions in her favor" (Matter of Jessica EE. v Joshua EE., 188 AD3d 1479, 1481 [2020] [internal quotation marks and citations omitted]; see CPLR 4401; Family Ct Act § 165 [a]). The aunt called as her first witness the former boyfriend, who testified that he lived with the mother, the child and the child's half sibling as a family unit from 2014 [FN3] until June 2016. He stated that he observed the child's first steps, dealt with her teething, accompanied the mother to the child's doctor appointments, attended the child's preschool field trips and attended social events with the mother and the child. He further stated that, during this time, the father did not visit or contact the child, attend birthday parties or holiday gatherings or provide gifts, cards, letters or money for the child. Additionally, the former boyfriend testified that the child believes that he is her father and calls him daddy and that he never met the father during the time that he lived with the child and, in fact, did not even know the identity of the father.
The aunt testified that, early on in the child's life, she attempted to make arrangements for the father to visit the child, but he never followed through and did not see the child. At one point, she contemplated seeking custody of the child due to the mother's drug use and contacted the father to see if he would object and he stated that he would not. The aunt stated that the father is a stranger to the child. The aunt further testified that, since the commencement of the proceedings, the father has paid no support and has not sent any gifts, cards, letters or supplies to the child, nor has anyone on his behalf reached out to her to arrange contact. Based on the foregoing testimony and accepting the evidence as true, we find that Family Court properly denied the father's motion to dismiss at the close of the aunt's proof (see Matter of William EE. v Christy FF., 151 AD3d 1196, 1198 [2017]; Matter of Caswell v Caswell, 134 AD3d 1175, 1176-1177 [2015]).
The father next asserts that Family Court erred in finding that [*3]extraordinary circumstances exist based on his abandonment of the child. A child is abandoned "if the 'parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child'" (Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018], quoting Social Services Law § 384-b [5] [a]; see Domestic Relations Law § 111 [2] [a]). The father testified that he lived with the mother, the child and the child's half brother in early 2014 for several months when the child was three months old. While living together, he contributed financially by purchasing a bassinet, crib, clothing and food. The father testified that after he and the mother separated, he did not know the whereabouts of the mother and had no contact with the child in 2015 or 2016 and did not provide any financial support for the child during that period. He stated that he accidentally ran into the mother and the child in April 2017 and thereafter saw the child one time each in May, June and July 2017 and had some Facetime contact with the child in October and November 2017. The father further testified that he paid the mother the total sum of $400 cash in 2017, and, although he purchased gifts for the child, he never delivered them.
Upon reviewing the entire record, and according due deference to Family Court's credibility determinations, there is ample proof that the father abandoned the child, as he failed to establish that he undertook any effort to locate, contact or build a relationship with the child throughout a majority of her life (see Matter of Annette B., 4 NY3d 509, 515 [2005]; Matter of Morgaine JJ., 31 AD3d 931, 932-933 [2006]). The minimal financial support and contact between the father and the child was too infrequent, sporadic and insubstantial to defeat the aunt's showing of abandonment (see Matter of Damien D. [Ronald D.], 176 AD3d 1411, 1412 [2019]; Matter of Joshua M. [Brittany N.], 167 AD3d 1268, 1271 [2018]). Thus, a finding of extraordinary circumstances is supported by a sound and substantial basis in the record (see Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1202 [2021]; Matter of Philip UU. v Amanda UU., 173 AD3d at 1385).
The father next contends that Family Court erred in not holding a hearing on the child's best interests. "Once extraordinary circumstances have been established, Family Court may then proceed to the issue of whether an award of custody to the nonparent, rather than the parent, is in the child's best interests" (Matter of Michael P. v Joyce Q., 191 AD3d at 1200 [internal quotation marks and citation omitted]; see Matter of Philip UU. v Amanda UU., 173 AD3d at 1384). Family Court conducted a three-day fact-finding hearing on the issues of extraordinary circumstances and the best interests of the child. Family Court is not required to hold a separate hearing on each issue. In assessing the best interests of the child, courts consider multiple [*4]factors, including "the parties' respective home environments, maintaining stability in the child[]'s [life] and each party's past performance, fitness and ability to provide for [and guide] the child[]'s development" (Matter of Bonnie AA. v Kiya DD., 186 AD3d 1784, 1786 [2020], lv dismissed and denied 36 NY3d 933 [2020]; see Matter of Damascus LL. v Janelle MM., 176 AD3d 1408, 1410 [2019]).
The aunt testified that she enrolled the child in preschool and rearranged her work schedule to be available to pick up the child from school and to be present while she is home from school. In addition, she enrolled the child in summer camp and implemented a structured daily schedule for the child to follow, she moved into a two bedroom apartment so that the child would have her own bedroom, and she facilitated visitations between the child and her half brother and between the child and the former boyfriend. The aunt further testified that she placed the child in play therapy and she saw a counselor to determine the best way to handle the death of the child's mother. Lastly, she stated that the father has been verbally aggressive towards her, including yelling and angry outbursts while in court, necessitating court officers to walk her to her car.
On his own behalf, the father testified that he has a bedroom set up for the child at his fiancÉe's house and is willing to continue counseling for the child and to facilitate visitation between the child, the aunt and the former boyfriend. However, he also testified that he left the child alone in the mother's care knowing that the mother struggled with drug abuse and did not take any steps to obtain custody or ensure the safety of the child. With respect to the father's ability to parent in general, he admitted that he also has a son who he learned was abused while in the mother's care, yet he did not take any steps to seek custody or ensure his son's safety; he also owes $20,000 in support arrears for his son. Moreover, he confessed that he was convicted of driving while intoxicated, recently committed domestic violence against his girlfriend, does not have a driver's license and is seasonally employed only part time. Based on the foregoing, and deferring to Family Court's credibility assessments, we find that the court's determination that it was in the best interests of the child to award guardianship to the aunt is supported by a sound and substantial basis in the record (see Matter of Amanda I. v Michael I., 185 AD3d 1252, 1255 [2020]; Matter of Renee TT. V Britney UU., 133 AD3d at 1105).
Lastly, the father contends that Family Court erred in denying him visitation during the pendency of the proceeding and in failing to address the issue as part of its final order. "[V]isitation with a noncustodial parent is presumed to be in a child's best interests" (Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019] [internal quotation marks and citations omitted]; see Matter of Harrell v Fox, 137 [*5]AD3d 1352, 1355 [2016]). This presumption, however, may be overcome with proof that visitation would be harmful to the child (see Matter of Alan U. v Mandy V., 146 AD3d 1186, 1188 [2017]; Matter of Joshua SS. v Amy RR., 112 AD3d 1159, 1160 [2013], lv denied 22 NY2d 863 [2014]). Initially, Family Court did not err in denying the father visitation prior to the establishment of paternity. After paternity was established, Family Court was faced with allegations that the father was a stranger to the child and had abandoned the child. In view of the relatively short period of time after the filiation order to when the fact-finding hearing was scheduled and the time a final determination would be rendered, Family Court did not err in denying visitation to the father.
As to addressing visitation in the final order, the aunt initially argues that the father failed to make any request for visitation with the child. The aunt further contends that, even if he did such that the issue is preserved, the matter should be remitted for a hearing on this issue.[FN4] As to the aunt's first contention, the record discloses that the father's counsel did make an application for the father "to have some contact with th[e] child." Accordingly, the father did preserve his request for visitation with the child. We next agree with the aunt that the matter should be remitted to Family Court for a hearing, as this is an issue that should be resolved upon proper proof. Because the record is not sufficiently developed on the issue of visitation — a point not disputed by the aunt — and in view of the significant passage of time since the order appealed from, the matter is remitted for a hearing and a determination as to whether visitation with the father is in the best interests of the child (see Matter of Jill Q v James R., 185 AD3d 1106, 1110 [2020]; Matter of Rebekah R. v Richard R., 176 AD3d 1340, 1343 [2019]). The father's remaining argument has been examined and found to be lacking in merit.
Garry, P.J., Clark, Aarons and Colangelo, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by remitting the matter to the Family Court of Columbia County for further proceedings not inconsistent with this Court's decision, and, as so modified, affirmed.



Footnotes

Footnote 1: Family Court erred in not initially determining whether the doctrine of equitable estoppel precluded the father from asserting paternity. The doctrine is a defense in a paternity proceeding and may be imposed "to protect the status interests of a child in an already recognized and operative parent-child relationship" (Matter of Christopher YY. v Jessica ZZ., 159 AD3d 18, 28 [2018] [internal quotation marks and citations omitted], lv denied 31 NY3d 909 [2018]). However, as there was not a timely appeal filed from the order of filiation, this issue is not before us (see Matter of Westchester County Dept. of Social Servs. v Jose C., 204 AD2d 795, 797 [1994]; Family Ct Act § 1113).

Footnote 2: The attorney for the child advocated for Family Court to award joint guardianship to the aunt and the former boyfriend. On appeal, the attorney for the child seeks to affirm the order, but she also seeks to vacate the order of filiation.

Footnote 3: The record evinces that the child was approximately six months old when the former boyfriend and the child began residing together.

Footnote 4: Although the attorney for the child advocated before Family Court that there should be no contact between the father and the child, on appeal, she adopted the arrangements regarding visitation set forth by the aunt.