Matter of William V. v Christine W. (2022 NY Slip Op 04199)

Matter of William V. v Christine W.

2022 NY Slip Op 04199

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

532388
[*1]In the Matter of William V., Respondent,
v
Christine W., Appellant. (And Three Other Related Proceedings.)

Calendar Date:May 23, 2022

Before:Egan Jr., J.P., Lynch, Pritzker, Ceresia and Fisher, JJ.

Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
William V., Edmeston, respondent pro se.
Teresa C. Mulliken, Harpersfield, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Otsego County (Lambert, J.), entered September 28, 2020, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2007). An October 2018 Family Court order awarded the father sole custody of the child and granted the mother supervised visitation, with the maternal grandparents to act as the supervisors. The order provided that, if the mother wished to expand her rights, she would be required to prove that she had (1) "meaningfully engaged and participated in substance abuse treatment and followed any recommendations and [had been] successfully discharge[d]," (2) "refrained from the use of alcohol, any illegal substance or misuse of any prescription medication," and (3) "obtained and maintained safe, suitable housing and employment or other legal financial means to support herself and [the] child."
In July 2020, the father filed a petition for enforcement of the order on the basis that the mother was having unsupervised visitation with the child and separately sought to modify the order by terminating her visitation. In support of the latter request, the father alleged, among other things, that the child no longer wished to visit with the mother and had returned home from a July 2020 visit with bent glasses and a mark on his leg. Shortly thereafter, the attorney for the child (hereinafter the AFC) also moved by order to show cause to modify the 2018 order, seeking to suspend the mother's visitation on the same grounds as the father's petition. The mother, in turn, filed a modification petition seeking joint legal custody, primary physical custody and unsupervised parenting time with the child.
Following fact-finding and Lincoln hearings, Family Court, as relevant here, (1) granted the father's and the AFC's petitions, (2) suspended the mother's visitation "until further order of the court," (3) denied the mother's modification petition, and (4) ordered the parties and the child to engage in therapeutic counseling to "address the current family relation issues." As for the mother's modification petition, the court found that she "failed to address the employment [condition]" of the October 2018 order so as to enable her to petition for a modification thereof, and otherwise failed to demonstrate a change in circumstances warranting a best interests inquiry. Regarding the request to suspend the mother's visitation, the court "credit[ed] the [evidence] that the [October 2018 order] ha[d] not been followed" insofar as there was testimony that the mother had engaged in two unsupervised visits, and found that "[t]he mother and father testified credi[]bly that relations with the mother and child ha[d] deteriorated," thereby concluding that continued supervised visitation was having a negative impact [*2]on the child's well-being. The mother appeals.
The mother initially contends that Family Court's finding that she did not meet the requisite "employment" condition of the 2018 order required to seek a modification of its terms lacks a sound and substantial basis in the record. We agree as it pertains to this particular finding. "A party seeking to modify a prior order of custody must show that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child would be served by a modification of that order" (Matter of Devin W. v Jessica X., 204 AD3d 1111, 1112 [2022] [internal quotation marks and citations omitted]; see Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1040 [2021]). However, "[t]his requirement may . . . be circumvented when the prior custody order provides that the satisfaction of certain conditions will constitute the necessary change in circumstances" (Matter of Austin ZZ. v Aimee A., 191 AD3d 1134, 1135 [2021]). Where the party seeking modification establishes compliance with such conditions, an inquiry into the best interests of the child is warranted (see id. at 1136).
To expand her rights under the 2018 order, the mother was required to show, among other things, that she had "obtained and maintained safe, suitable housing and employment or other legal financial means to support herself and [the] child" (emphasis added). Although the mother testified that she was unemployed, she clarified that she was a full-time registered nursing student and was able to support her children through severance payments from the termination of her previous job. The mother also gave testimony indicating that she had satisfied the other conditions of the October 2018 order, and neither the father nor the AFC sufficiently refuted such testimony. As such, Family Court's finding that the mother did not meet the requisite financial condition imposed in the 2018 order, and otherwise failed to establish a change in circumstances warranting a best interests review, is not supported by a sound and substantial basis in the record. Nevertheless, after considering the evidence presented at the fact-finding hearing, which demonstrated a somewhat strained relationship between the mother and the child, and taking due account of the Lincoln hearing testimony, we conclude that modifying the October 2018 order in the manner she requested is not in the child's best interests (see Matter of Sherrod U. v Sheryl V., 181 AD3d 1069, 1070-1071 [2020]; Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1014-1015 [2015]). As such, there is no basis upon which to disturb the dismissal of the mother's modification petition.
As for the father's and the AFC's request to suspend the mother's visitation, although the failure to abide by the terms of a parenting time order can, in an appropriate case, constitute the requisite change in circumstances (see Matter of Nelson UU. v Carmen VV., 202 AD3d [*3]1414, 1416 [2022]), the father identified only two instances in which the mother had unsupervised parenting time with the child and conceded that he had given the mother permission to be alone with him on both of those occasions. The mother and the maternal grandfather both confirmed that one of the grandparents was at home at all times during the visits and, to the extent that the mother may have taken the child to get ice cream without a supervisor present, this isolated event was insufficient to establish the requisite change in circumstances. That said, a change in circumstances was shown on a different basis, as the testimony at the fact-finding hearing indicated that the relationship between the mother and the child was somewhat strained. This showing justified a review of the visitation provisions of the October 2018 order (see Matter of Biernbaum v Burdick, 162 AD3d 1664, 1665 [2018]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1341 [2016], lv dismissed and denied 27 NY3d 1061 [2016]).
However, we agree with the mother that Family Court's determination to suspend her visitation lacks a sound and substantial basis in the record. "[I]t is well established that visitation with a noncustodial parent . . . is presumed to be in the best interests of the child" (Matter of Angelina H. v Derrick I., 187 AD3d 1357, 1358 [2020] [internal quotation marks, brackets and citation omitted]). This presumption may be overcome only where "the party opposing visitation sets forth compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child's welfare" (Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1146 [2020] [internal quotation marks and citation omitted]; see Matter of Heather NN. v Vinnette OO., 180 AD3d 57, 62 [2019]). To that end, "[t]he child's wishes, though entitled to great weight, should not dictate the result of a custodial determination" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1171 [2019] [internal quotation marks, brackets and citations omitted]).
Although Family Court found that both the mother and the father "testified credi[]bly that relations between the mother and child ha[d] deteriorated" — a determination that was borne out by the testimony — the "denial of visitation to a noncustodial parent is a drastic remedy" (Matter of Stitzel v Brown, 1 AD3d 826, 827 [2003] [internal quotation marks, brackets and citation omitted]) and the record does not contain "substantial proof" that continued supervised visitation "would be harmful to the child" (Matter of Angelina H. v Derrick I., 187 AD3d at 1358). We are mindful of the father's testimony that the child had returned home from a visit with bent glasses and marks on his leg. However, Family Court did not make any factual findings regarding these allegations, and the maternal grandfather — who drove the child home from that visit — denied ever observing the child's glasses to be "messed [*4]up" or witnessing marks on the child's legs. On this record, there is an insufficient basis to conclude that the bent glasses and marks observed by the father were caused by the mother's conduct. Moreover, while the mother herself acknowledged that there were issues in the relationship between her and the child, she indicated that this stemmed from the child's difficult behavior and her concern about the child making racist comments in front of his three-year-old half-sibling. There was also testimony regarding the positive aspects of their relationship and the maternal grandfather, who did all the driving, corroborated that the child generally seemed content during visits. Notwithstanding the father's testimony to the contrary, we conclude that the evidence presented was not sufficiently compelling and substantial to justify a wholesale suspension of the mother's supervised visitation (see Matter of Boisvenue v Gamboa, 166 AD3d 1411, 1413 [2018]; Matter of Tuttle v Mateo, 121 AD3d 1602, 1604 [2014]).
Egan Jr., J.P., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as suspended respondent's supervised visitation; and, as so modified, affirmed.