Matter of Ajmal I. v LaToya J. (2022 NY Slip Op 05912)

Matter of Ajmal I. v LaToya J.

2022 NY Slip Op 05912

Decided on October 20, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 20, 2022

534329
[*1]In the Matter of Ajmal I., Petitioner,
v
LaToya J., Appellant.

Calendar Date:September 12, 2022

Before:Egan Jr., J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Christopher Hammond, Cooperstown, for petitioner.
Lisa K. Miller, McGraw, attorney for the child.

Egan Jr., J.P.
Appeal from an order of the Family Court of Broome County (Mark H. Young, J.), entered September 13, 2021, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of a son (born in 2007). The parties' relationship was notable for both verbal and physical violence and, in 2009, they separated. Pursuant to a February 2012 order, the mother was awarded sole legal and physical custody of the child, while the father, who had failed to appear in the underlying proceeding, was granted the right to petition for custody and/or visitation in the future.
The father left New York in 2009 and has not resided in the state since. He has intermittently gotten along with the mother in the ensuing years and has had some contact and visits with the child as a result; nevertheless, the parties' relationship has generally been tense, which was reflected in the derogatory comments each has made about the other on social media. As such, and given the father's prior menacing and assaultive behavior toward the mother, she remained afraid of him and refused to give him her address. In November 2019, approximately four months after the father failed to obtain a promised birthday gift for the child and the mother and the child both cut off contact with him, the mother learned that the father had offered money on social media to anyone who gave him the mother's address, then posted that he had obtained the address and would "[s]ee [her] soon." The mother filed a family offense petition seeking an order of protection against the father. The father responded by filing a custody modification petition and seeking, for the first time since the issuance of the 2012 custody order, visitation with the child.
After conducting a fact-finding hearing regarding the mother's family offense petition, Family Court issued a January 2021 order in which it determined that the father had committed a family offense and issued an order of protection in favor of the mother.[FN1] Family Court then conducted a fact-finding hearing on the father's modification petition, during which it took judicial notice of the prior proceedings involving the parties, heard testimony from the parties and conducted an in camera interview with the child. Following that hearing, Family Court rendered a decision from the bench in which it determined, among other things, that the best interests of the child lie in continuing the award of sole legal and physical custody to the mother. Family Court did, however, grant the father two hours of supervised visitation with the child so long as he gave the mother at least a week's notice of his plans to travel to New York and exercise that visitation.[FN2] The mother appeals from the order implementing the terms of that decision.
Although "[t]he propriety of visitation is left to the sound discretion [*2]of Family Court and its findings, guided by the best interests of the child, will not be disturbed unless they lack a sound basis in the record," we agree with the mother and the attorney for the child that there is no such basis for the award of visitation here (Matter of Moore v Schill, 44 AD3d 1123, 1123 [3d Dept 2007]; see Matter of Alan U. v Mandy V., 146 AD3d 1186, 1188 [3d Dept 2017]). We therefore reverse and dismiss the father's petition in its entirety.
Visitation with a noncustodial parent is presumed to be in the best interests of the child, but that "presumption may be overcome where the party opposing visitation sets forth compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child's welfare" (Matter of Angela H. v St. Lawrence County Dept. of Social Servs., 180 AD3d 1143, 1146 [3d Dept 2020] [internal quotation marks and citation omitted]; accord Matter of William V. v Christine W., 206 AD3d 1478, 1481 [3d Dept 2022]).[FN3] This "standard of substantial proof 'should not be interpreted in such a way as to heighten the burden, of the party who opposes visitation, to rebut the presumption by a preponderance of the evidence'" (Matter of Owens v Chamorro, 114 AD3d 1037, 1039 [3d Dept 2014] [ellipsis and emphasis omitted], quoting Matter of Granger v Misercola, 21 NY3d 86, 92 [2013]). As such, the party opposing visitation will meet his or her burden with "sworn testimony or documentary evidence that visitation would be harmful to the child or that the noncustodial parent has forfeited the right of access" (Matter of Owens v Chamorro, 114 AD3d at 1039; see Matter of Newman v Doolittle, 151 AD3d 1233, 1234 [3d Dept 2017]).
Turning to the proof, it is undisputed that the father has not lived with the child in over a decade and has only infrequently visited the child due to, among other things, his moving out of the area and frequently relocating around the United States. The father also made no effort to seek a formal award of visitation until 2019, more than seven years after the issuance of the 2012 custody order and over two years after he had last seen the child. This failure by the father to seek a visitation order or otherwise "avail himself . . . of opportunities for visitation over a lengthy period of time is appropriately taken into account in considering whether visitation is appropriate" (Matter of Owens v Chamorro, 114 AD3d at 1039; accord Matter of Newman v Doolittle, 151 AD3d at 1235).
Moreover, the mother testified as to how the father behaved in an irresponsible and harmful manner on the occasions when he did interact with the child and, although the father disputed those claims, we defer to Family Court's assessment that the father's testimony was not credible (see Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1018-1019 [3d Dept 2022]; Matter of Katie R. v Peter Q., 207 AD3d 844, 846 [3d Dept 2022]). By way of example, the mother described how, during a 2014 visit with [*3]the child during his winter break from school, the father cut off contact with her and left the child with relatives so that he could attend a party and travel to New York City, leaving the mother unaware of the child's whereabouts until the child called her several days later. The father did not see the child again until a 2017 family trip to an amusement park, and the mother testified that he upset the child then by, among other things, livestreaming the visit, including the child's personal conversations, over social media. The mother further set forth how the father did not have frequent electronic contact with the child after that visit and, when that contact did occur, the child was upset by it. Indeed, the attorney for the child confirmed to Family Court, and now advises us, that the teenage child is upset by interactions with the father for a variety of reasons and does not wish to see him. The child's preference to have no in-person contact with the father is not dispositive, but is entitled to "considerable weight" given the child's age (Matter of Meier v Meier, 79 AD3d 1295, 1296 [3d Dept 2010]; see Matter of William V. v Christine W., 206 AD3d at 1481).
In our view, the foregoing satisfied the mother's burden of establishing that any visitation with the father would be harmful to the child (see Matter of Newman v Doolittle, 151 AD3d at 1234-1235; Matter of VanBuren v Assenza, 110 AD3d 1284, 1284-1285 [3d Dept 2013]). As such, the father's petition seeking visitation should have been dismissed (cf. Matter of VanBuren v Assenza, 110 AD3d at 1284-1285; Matter of Heyer v Heyer, 112 AD2d 539, 540 [3d Dept 1985]).
The mother's remaining challenges to the appealed-from order have been rendered academic by the foregoing.
Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and petition dismissed.

Footnotes

Footnote 1: No appeal was taken from that order.

Footnote 2: The order did not specify how frequently the father could exercise that visitation. It also required, for reasons that are unclear, that the mother and the child continue to reside in Broome County.

Footnote 3: Because the 2012 custody order was issued upon the father's nonappearance and reserved his right to apply for custody and/or visitation with the child in the future, Family Court properly undertook a best interests analysis without first determining whether a change in circumstances had occurred since the issuance of that order that would warrant one (see Matter of Shawn MM. v Jasmine LL., 180 AD3d 1186, 1187 [3d Dept 2020]).