Matter of Autumn B. v Jasmine A. (2023 NY Slip Op 05293)

Matter of Autumn B. v Jasmine A.

2023 NY Slip Op 05293

Decided on October 19, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 19, 2023

535092
[*1]In the Matter of Autumn B., Respondent,
v
Jasmine A., Respondent, and Glenn ZZ., Appellant. (And Four Other Related Proceedings.)

Calendar Date:September 13, 2023

Before:Garry, P.J., Egan Jr., Aarons, McShan and Mackey, JJ.

Lisa K. Miller, McGraw, for appellant.
Garufi Law PC, Binghamton (Carman M. Garufi of counsel), for Autumn B., respondent.
Pamela B. Bleiwas, Ithaca, for Jasmine A., respondent.
Larisa Obolensky, Delhi, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of Broome County (Daniel J. Fitzsimmons, Referee), entered February 17, 2022, which, among other things, granted petitioner's amended application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
Respondents Jasmine A. (hereinafter the mother) and Glenn ZZ. (hereinafter the father) are the parents of the subject child (born in 2014); although the father's paternity has been questioned, it is undisputed that he executed a voluntary acknowledgment of paternity following the child's birth and that the acknowledgement remains in force. The child, like his older half sister, was raised by his maternal grandparents, whom the child understood to be his mother and father.[FN1] Following the grandmother's death in March 2020, petitioner (hereinafter the aunt), the child's maternal aunt, commenced the first of the instant proceedings, seeking sole custody of the subject child and his half sister. Family Court (Young, J.) granted the aunt temporary custody of both children, and the children moved to Maryland to live with the aunt and her two daughters.[FN2] Beginning in June 2020, the father filed several petitions seeking visitation with the subject child, and, in October 2020, he petitioned for some form of custody. Following a fact-finding hearing and Lincoln hearing, Family Court (Fitzsimmons, Referee) awarded the aunt sole custody of the child and granted the father 30 minutes of supervised video visitation every two weeks and at least two hours of supervised, in-person visitation per year, over either one or two days at the aunt's discretion. The father appeals.
As a preliminary matter, although there may have initially been an unwarranted amount of attention paid to the father's alleged lack of biological relationship to the subject child, it was ultimately accepted that the father's unchallenged acknowledgment of paternity affords him the legal status of a parent (see generally Family Ct Act § 516-a; Public Health Law § 4135-b). We therefore reject the father's argument that Family Court's award was affected by a fundamental misunderstanding of law.
"[A] parent has a claim of custody of his or her child that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Nicole L. v David M., 195 AD3d 1058, 1059-1060 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Bennett v Jeffreys, 40 NY2d 543, 546 [1976]). "Where, as here, there has been no prior finding of extraordinary circumstances, it remains the nonparent's burden to demonstrate the existence thereof and, thus, that he or she has standing to seek custody of another person's child" (Matter of Jared MM. v Mark KK., 205 AD3d 1084, 1087 [3d Dept 2022] [citations omitted]; see Matter of Sonya M. v Tabu N., 198 AD3d 1206, 1208 [3d Dept 2021], lvs [*2]denied 38 NY3d 901 [2022], 38 NY3d 902 [2022]). "Such inquiry necessitates consideration of the cumulative effect of all issues present in a given case, including the quality of the child's relationship with the parents and the nonparent, whether the child has lived with the nonparent for any length of time and any neglect by the parents" (Matter of Lisa F. v Thomas E., 211 AD3d 1367, 1368-1369 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; Matter of Tiffany W. v James X., 196 AD3d 787, 789 [3d Dept 2021]).
There is no dispute, as the aunt demonstrated, that the child's grandparents raised him since birth and that he believed them to be his parents and the father to be "a family friend."[FN3] The father voluntarily relinquished all parental responsibilities and control of the child to the grandparents, and, until this litigation, he did not hold himself out as the child's father. He was aware of the grandmother's death, but he only asserted his first request for any form of physical custody of the child seven months later. The grandmother had historically facilitated the child spending some time with both the mother and the father, but it bears noting that the father has never spent any time alone with the child; their interactions were brief, in a public place, supervised and largely ancillary to the father's relationship with the mother. The father had no contact with the child whatsoever in the several months prior to the grandmother's death. The record is also devoid of any evidence of a bond between the father and the child — parental or otherwise. We therefore reject the father's assertion that the aunt failed to establish extraordinary circumstances (see Matter of Jared MM. v Mark KK., 205 AD3d at 1089; Matter of Nicole L. v David M., 195 AD3d at 1061; Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1202 [3d Dept 2021], lvs denied 37 NY3d 901 [2021], 37 NY3d 902 [2021]; Matter of Isaiah O. v Andrea P., 287 AD2d 816, 817 [3d Dept 2001]).
Extraordinary circumstances having thus been established, the inquiry turns to "what custodial arrangement will further the child's best interests, and relevant factors in that analysis include maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Jared MM. v Mark KK., 205 AD3d at 1087 [internal quotation marks and citations omitted]; see Matter of Tiffany W. v James X., 196 AD3d at 791).
As previously noted, the father has not cared for the child for any period of time, and there is no indication of any meaningful relationship between them. While the child was in the grandmother's custody, the father provided some financial support to the child by way of his Social Security Disability benefits. No efforts were made following the [*3]grandmother's death to secure those ongoing benefits for the child. The father historically had only seasonal employment, for two or three months out of the year, and does not drive or own a vehicle due to a mobility impairment. At the time of the hearing, he lived in a two-bedroom apartment that he shared with a roommate; there was no evidence offered regarding the roommate. The father's plan related to his request for physical custody of the child was to sleep in the apartment's living room so as to provide the child with private space. He offered no evidence to show that he had considered, and could meet, any of the child's basic needs. Notably, the father also advocated for separating the child from his half sister, with whom the child has lived his entire life. As evidenced in the aunt's proof and throughout the court proceedings, the father had consistent difficultly controlling his behavior, despite his voluntary completion of an anger management program. The father also has a history of illegal drug use, including during the course of these proceedings when he found himself unable to cope with the child's move to Maryland. His medical condition(s) also require him to take at least one prescribed medication that could impair his ability to safely supervise a child.
In contrast, the aunt has stable income and employment as a medical professional and a home that affords all four children living in it comfort, privacy and safety. She has demonstrated her ability to care for the child's needs and provide him with enriching opportunities over an extended period of time. The child's placement with the aunt also permits him to remain with his half sister. Although we acknowledge the aunt's stated intention to limit the relationship between the child and the father — a position partly inspired by the father's hostility toward her and the child's confusion by the father's involvement in his life — there is no indication that she disparages the father or that she will not meaningfully implement an order of visitation. Deferring to Family Court's credibility determinations and factual findings, we find a sound and substantial basis in the record for awarding the aunt sole custody of the child (see Matter of Lisa F. v Thomas E., 211 AD3d at 1370; Matter of Tiffany W. v James X., 196 AD3d at 791-792; Matter of Tasha AA. v Tammy DD., 178 AD3d 1306, 1309 [3d Dept 2019]; Matter of DellaPiana v DellaPiana, 161 AD3d 1228, 1231 [3d Dept 2018]; Matter of Kowalsky v Converse, 79 AD3d 1310, 1312 [3d Dept 2010]).
The father alternatively requests increased visitation — specifically, four in-person visits per year, the same quarterly arrangement that it appears the mother was to enjoy with the children. It is well established that "[v]isitation with a noncustodial parent is presumed to be in the best interests of the child" absent "compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child's welfare" (Matter of [*4]Ajmal I. v LaToya J., 209 AD3d 1161, 1162-1163 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Granger v Misercola, 21 NY3d 86, 91-92 [2013]). "[I]f no harm to the child would result from [visitation], Family Court is required to structure a schedule [that] results in frequent and regular access by the noncustodial parent" (Matter of Erick RR. v Victoria SS., 206 AD3d 1523, 1526 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Nicole J. v Joshua J., 206 AD3d 1186, 1188 [3d Dept 2022]). The record here does not contain any such proof of harm (compare Matter of Ajmal I. v LaToya J., 209 AD3d at 1163-1164; Matter of Robert AA. v Colleen BB., 101 AD3d 1396, 1397-1398 [3d Dept 2012], lv denied 20 NY3d 860 [2013]). However, given the father's minimal involvement in the child's life, the child's present confusion regarding the father, the geographical distance between the parties, the physical and financial restrictions on the father's travel and the unchallenged need for visits to be brief and supervised, we discern no basis to disturb the court's visitation schedule (see Matter of Angelina H. v Derrick I., 187 AD3d 1357, 1359-1360 [3d Dept 2020]; Matter of Adam E. v Heather F., 151 AD3d 1212, 1215 [3d Dept 2017]; Matter of Carter v Work, 100 AD3d 1557, 1557 [4th Dept 2012]; Matter of Brown v Erbstoesser, 85 AD3d 1497, 1499-1500 [3d Dept 2011]). Although the in-person visitation is limited, the court's schedule permits the father biweekly access to the child and affords him the much needed opportunity to develop a relationship with the child during this significant transition in the child's life.[FN4]
Many of the father's remaining contentions, including his challenges to the facial sufficiency of the aunt's amended petition and issues of due process surrounding the temporary order of custody, are raised for the first time on appeal and therefore unpreserved for our review (see CPLR 5501 [a] [3]; Family Ct Act § 1118; Matter of Jemar H. v Nevada I., 182 AD3d 805, 808-809 [3d Dept 2020]; Matter of Borggreen v Borggreen, 13 AD3d 756, 757 [3d Dept 2004]).
Finally, we reject the father's contention that he was deprived of his right to the effective assistance of counsel. The principal allegation underlying his claim is counsel's failure to have more expediently obtained visitation for the father during the pendency of these proceedings. The commencement of these proceedings, however, coincided with the start of the COVID-19 pandemic, and the extended delays between appearances are not attributable to counsel, who did successfully file several orders to show cause seeking interim visitation. The father also faults counsel for failing to call additional witnesses to testify, but he does not proffer what witnesses should have been called or assert that their testimony would have been favorable to him. Thus, we cannot conclude that counsel's decision was not legitimate trial strategy (see Matter of Audreanna [*5]VV. v Nancy WW., 158 AD3d 1007, 1010-1011 [3d Dept 2018]; Matter of James P., 17 AD3d 733, 735 [3d Dept 2005]; Matter of Thompson v Jones, 253 AD2d 989, 990 [3d Dept 1998]). The other failings alleged by the father are either premised on inaccuracies or are "inconsequential to the outcome of these proceedings given the evidence adduced at the hearings" (Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1418 [3d Dept 2021]; see Matter of Daniel QQ. v Tanya RR., 217 AD3d 1080, 1081 [3d Dept 2023]). Based upon our review of the record and the totality of the circumstances in this case, the father has failed to meet his burden to demonstrate that he was deprived of meaningful representation.
Egan Jr., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: In 2013, the mother consented to a finding of neglect and the temporary placement of the half sister with the grandmother. Upon the subject child's birth, he was also temporarily placed with the grandmother on the mother's consent. The grandmother was later awarded sole custody of both children, with reasonable custodial periods to the mother as could be agreed upon. The father was not a party to that custody proceeding, which was commenced before he signed his acknowledgment of paternity.

Footnote 2: The aunt and the mother subsequently agreed that the aunt would have sole custody of the half sister. The mother also supported awarding the aunt sole custody of the subject child.

Footnote 3: The child similarly knew the mother as a friend and referred to her by her first name only, but he now understands her to be his biological mother.

Footnote 4: The attorney for the child during the proceedings before Family Court generally supported the father's request for quarterly visitation. The attorney for the child on appeal argues that there is no basis in the record for granting the father any visitation, asserting that, because he is not the child's biological parent, there is no presumption that visitation would be in the child's best interests. As noted above, this is a mischaracterization of the import of the father's unchallenged acknowledgment of paternity. The attorney for the child does not assert that continued visitation would be harmful to the child.