Matter of Bonnie AA. v Kiya DD. (2020 NY Slip Op 05001)





Matter of Bonnie AA. v Kiya DD.


2020 NY Slip Op 05001


Decided on September 17, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 17, 2020

527299

[*1]In the Matter of Bonnie AA., Respondent,
v
Kiya DD. et al., Respondents, and Reggie BB., Appellant. (And Two Other Related Proceedings.)

Calendar Date: August 19, 2020

Before: Egan Jr., J.P., Clark, Mulvey, Devine and Pritzker, JJ.


John A. Cirando, Syracuse, for appellant.
Pamela B. Bleiwas, Ithaca, for Bonnie AA., respondent.
Lisa K. Miller, McGraw, attorney for the children.



Clark, J.
Appeal from an order of the Family Court of Chemung County (Tarantelli, J.), entered August 3, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Respondents Reggie BB. (hereinafter the father) and Felicia EE. (hereinafter the mother) are the parents of a son (born in 2010) and twin daughters (born in 2013). Pursuant to a May 2017 order, Family Court granted joint legal custody of the twins to petitioner — the children's maternal grandmother — and the father, with the grandmother having primary physical custody and the father having supervised parenting time twice a month. As for the son, Family Court granted joint legal custody to respondent Kiya EE. — the children's maternal cousin — and the father, with the cousin having primary physical custody and the father having supervised parenting time twice a month. With respect to the father's parenting time, Family Court set forth a graduated schedule, under which the father could become entitled to expanded and unsupervised parenting time with the children.
In June 2017, the grandmother filed a modification petition alleging that the son had begun residing with her, rather than the cousin, and requesting "physical placement" of the son.[FN1] In response, the father filed a modification petition seeking sole legal and physical custody of the children, as well as a violation petition alleging that the grandmother had failed to comply with various provisions of the May 2017 order. Following a joint fact-finding hearing on all three petitions, as well as a Lincoln hearing, Family Court granted the grandmother sole legal custody of all three children and primary physical custody of the son and dismissed the father's modification and violation petitions. As it did in the May 2017 order, Family Court granted the father supervised parenting time two weekend days per month and set forth a graduated schedule of expanded and unsupervised parenting time that was contingent upon the father consistently exercising his parenting time.[FN2] The father appeals.
Initially, as Family Court correctly concluded, the grandmother was not required to prove the existence of extraordinary circumstances, as there was a prior judicial determination of extraordinary circumstances that was set forth on the record and incorporated into the May 2017 order (see Matter of Ray v Eastman, 117 AD3d 1114, 1114 [2014]; Matter of Cusano v Milewski, 68 AD3d 1272, 1273 [2009]). Thus, given that the father's preferred status as the birth parent had already been lost by the prior determination of extraordinary circumstances, the questions before Family Court were whether there had been a change in circumstances since entry of the May 2017 order and, if so, whether the best interests of the children would be served by a modification of that order (see Matter of Ray v Eastman, 117 AD3d at 1114; Matter of Cusano v Milewski, 68 AD3d at 1273; Matter of Metcalf v Odums, 35 AD3d 865, 866 [2006]).
The record establishes that, a few weeks after entry of the May 2017 order, the cousin was no longer in a position to maintain primary physical custody of the son and that the son had therefore begun residing with the grandmother and his twin sisters. In our view, the shifts in the cousin's ability to be the son's primary custodian and in the son's physical residence constituted the change in circumstances necessary to warrant an inquiry into whether modification of the May 2017 was in the best interests of the children. In assessing the best interests of the children, courts consider a variety of factors, including the length of time that the existing custody arrangement has been in place, the parties' respective home environments, maintaining stability in the children's lives and each party's past performance, fitness and ability to provide for the children's development (see Matter of Sweeney v Daub-Stearns, 166 AD3d 1340, 1342 [2018]; Matter of Maerz v Maerz, 165 AD3d 1404, 1406 [2018], lv denied 32 NY3d 914 [2019]).
The evidence established that the grandmother had been a steady presence in the children's lives, having cared for them for a majority of their lives when neither the father nor the mother was in a position to do so. Testimony from a child protective services investigator, as well as the mother and the grandmother, demonstrated that the grandmother's home was safe, clean and appropriate for the children, with each child having his or her own bed. The investigator testified that the twins were "making gains" academically, that the children had an observably good relationship with the grandmother and that the children played well with each other and two of their cousins, who also lived with the grandmother. As demonstrated by the testimony, the grandmother was involved in the children's academics and routine medical care and facilitated the children's regular contact with the mother and the children's half siblings and maternal relatives, all of whom lived nearby. In addition, the grandmother testified that she supervised the father's parenting time with the children, that the father had not consistently exercised his parenting time and that, as a result, the children — who are extremely shy — were not yet comfortable with the father.[FN3] The grandmother stated that she was supportive of the father developing a better relationship with the children and that, although she thought it possible that the children could live with the father at some point in the future, the children were not ready for that.
As for the father, the evidence established that the son had resided with the father from the time he was born in 2010 until the father's incarceration in 2013 and that the twins had never resided with the father, having only visited with him during his incarceration and following his release in December 2016. Although testimony from the father's parole officer established that he had done well since his release from prison, having earned early termination from parole, the evidence demonstrated that the father had only recently gained steady employment and that his living situation was entirely dependent upon his continued relationship with his girlfriend of several months. The evidence demonstrated that the children had never visited the father at his home in Monroe County and that they were unfamiliar with their paternal relatives in that area. Further, although the father offered reasons as to why he had not consistently exercised his parenting time with the children, it was undisputed that the father had never graduated to the point where he was able to exercise unsupervised parenting time with the children. As revealed by the father's testimony, the father was not involved in the children's academic studies or their routine medical care and did not know basic information, such as the grade levels that the children were in or the names of their teachers and pediatricians.
The evidence further established that the father and the grandmother had an increasingly acrimonious relationship, so as to make joint legal custody infeasible. Indeed, the father testified that he had made a hotline report against the grandmother, which was ultimately unfounded, and his testimony indicated that he blamed the grandmother for his failure to advance his relationships with the children. Considering all of the record evidence, and deferring to Family Court's credibility determinations, we find that a sound and substantial basis exists in the record to support Family Court's determination that the best interests of the children lie in granting the grandmother sole legal and primary physical custody and setting forth a graduated parenting time schedule that provides the father with expanded and unsupervised parenting time in the future (see Matter of Sweeney v Daub-Stearns, 166 AD3d at 1342; Matter of Maerz v Maerz, 165 AD3d at 1406).[FN4]
The father also challenges Family Court's dismissal of his violation petition against the grandmother. "To sustain a finding of civil contempt for a violation of a court order, a petitioner must show by clear and convincing evidence that there was a lawful court order in effect that clearly expressed an unequivocal mandate, that the person who allegedly violated the order had actual knowledge of its terms, and that his or her actions or failure to act defeated, impaired, impeded or prejudiced a right of the moving party" (Matter of Wesko v Hollenbeck, 149 AD3d 1175, 1175-1176 [2017] [internal quotation marks and citations omitted]; accord Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1172-1173 [2019]). The petitioner must further establish that the alleged violation was willful (see Matter of Wesko v Hollenbeck, 149 AD3d at 1176; Matter of Eller v Eller, 134 AD3d 1319, 1320 [2015]).
In his petition, the father alleged that the grandmother refused him visits and electronic communication with the children to the fullest extent allowed by the May 2017 order, had not provided him with information regarding the children's activities, schooling and medical care and took the children out of state over a weekend when he potentially could have exercised parenting time. We agree with Family Court that the father failed to demonstrate by clear and convincing evidence that the grandmother willfully committed any of the alleged violations. Accordingly, we discern no abuse of discretion in Family Court's dismissal of the father's violation petition (see Matter of Wesko v Hollenbeck, 149 AD3d at 1176; Matter of Prefario v Gladhill, 140 AD3d 1235, 1236-1237 [2016]).
To the extent that we have not addressed any of the father's arguments, they have been reviewed and found to be without merit.
Egan Jr., J.P., Mulvey, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother and the cousin were supportive of the grandmother's request.

Footnote 2: Family Court stated that it was initially requiring supervised parenting time out of a concern "for the comfort of the children," not because it was concerned about the appropriateness of the father.

Footnote 3: The grandmother also supervised the mother's parenting time with the children. At the time of the hearing, the mother was homeless, living in a shelter and addressing her drug addiction issues.

Footnote 4: We note that, although not determinative, the attorney for the children supports Family Court's order.