Matter of Sonya M. v Tabu N. (2021 NY Slip Op 05901)





Matter of Sonya M. v Tabu N.


2021 NY Slip Op 05901


Decided on October 28, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:October 28, 2021

531019
[*1]In the Matter of Sonya M., Respondent,
v
Tabu N. et al., Appellants. (Proceeding No. 1.) (And Two Other Related Proceedings.)
In the Matter of Helen O., Appellant,
v
Sonya M., Respondent, and Tabu N., Appellant. (Proceeding No. 4.) (And Two Other Related Proceedings.)

Calendar Date:September 17, 2021

Before:Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.

Lisa K. Miller, McGraw, for Helen O., appellant.
Alena E. Van Tull, Binghamton, for Tabu N., appellant.
Clea Weiss, Ithaca, for respondent.
Pamela B. Bleiwas, Ithaca, attorney for the children.



Egan Jr., J.
Appeals (1) from an order of the Family Court of Broome County (Connerton, J.), entered November 4, 2019, which, in proceeding Nos. 1 and 3 pursuant to Family Ct Act article 6, granted petitioner temporary custody of the subject children, and (2) from an order of said court, entered December 26, 2019, which, among other things, granted petitioner's applications, in proceeding Nos. 1 and 3 pursuant to Family Ct Act article 6, for custody of the subject children.
Petitioner Helen O. (hereinafter the mother) and respondent Tabu N. (hereinafter the father) are the biological parents of two children (born in 2016 and 2018). The children were born while the father was involved in a long-term relationship with Sonya M. (hereinafter the former partner). Approximately six weeks after the older child's birth, the mother consented to the father taking primary physical custody of the older child and having him reside and be cared for at the residence that the father and the former partner shared. The older child has remained in such care since such time. In April 2018, the mother gave birth to the younger child and, in late August or early September 2018, the mother moved the younger child into the residence of the father and the former partner. The mother intermittently resided at the residence with the father and the former partner, but moved into her own apartment in late January or early February 2019. Each time the mother vacated the residence, the subject children remained in the care of the former partner. On March 23, 2019, following a violent domestic incident between the father and the former partner, the former partner vacated the residence and moved into a domestic violence shelter with the subject children.[FN1]
Thereafter, on March 26, 2019, the former partner filed a petition seeking sole custody of the subject children, alleging that the mother and the father were unfit and had abandoned the children and that she had physical custody of, and been primary caretaker for, the children for an extended period of time. She also filed a family offense petition against the father, prompting Family Court to issue a temporary order of protection against him.[FN2] On March 29, 2019, the mother filed a custody petition seeking sole custody of the subject children, alleging that the former partner had taken the children without her permission. Following an initial appearance on the petitions, Family Court declined to enter a temporary order with respect to custody, and the children remained in the care of the former partner.[FN3] While these proceedings were pending, on June 3, 2019, the former partner was walking down the street with the subject children when she was accosted by the mother and the mother's eldest son, who is not subject to the instant proceedings, during which the younger child was taken from her stroller and placed into a vehicle with the father while the mother unsuccessfully attempted to take the older child from the former partner[*2]. Later that same day, the mother filed a second petition seeking custody of the subject children [FN4] and, on June 5, 2019, the former partner filed an amended custody petition.[FN5] Family Court thereafter granted the former partner temporary custody of the subject children and, in an order entered in November 2019, continued that award. Family Court then completed a fact-finding hearing and, by order entered in December 2019, it, among other things, granted the petition of the former partner, finding that extraordinary circumstances had been established and that it was in the best interests of the children for her to be awarded sole legal and primary physical custody of the children, with supervised parenting time to the mother and the father. The mother and the father appeal from both the November 2019 and the December 2019 orders.[FN6]
The mother and the father both contend that Family Court erred in determining that extraordinary circumstances had been established.[FN7] It is axiomatic "that a parent has a claim of custody of his or her child[ren] that is superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness, disruption of custody over a prolonged period of time or the existence of other extraordinary circumstances" (Matter of Nicole L. v David M., 195 AD3d 1058, 1059-1060 [2021] [internal quotation marks, brackets and citations omitted]; see Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]; Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1200 [2021], lvs denied 37 NY3d 901, 902 [2021]). It is the heavy burden of the nonparent to establish the existence of such extraordinary circumstances (see Matter of Tiffany W. v James X., 196 AD3d 787, 789 [2021]), and the relevant factors to be considered include, among others, the presence of "domestic violence, as well as the length of time the children have lived with the nonparent, the quality of that relationship and the length of time the parent allowed such custody to continue without trying to assume the primary parental role" (Matter of Mary D. v Ashley E., 158 AD3d 1022, 1023 [2018] [internal quotation marks, brackets and citations omitted]; see Matter of Tasha AA. v Tammy DD., 178 AD3d 1306, 1307 [2019]). Where extraordinary circumstances are established to show that the nonparent has standing to seek custody, the inquiry shifts to determining what custodial arrangement would serve the best interests of the children (see Matter of Melissa F. v Raymond E., 193 AD3d 1123, 1126 [2021]; Matter of Terry PP. v Domiyon PP., 184 AD3d 914, 915 [2020]).
The record at the fact-finding hearing established that the father and the former partner were in a committed relationship for approximately 22 years and had four biological children together. In February 2016, the father asked the former partner to babysit and later arrived at their residence with the older child and informed the former partner — for the first time — that the older child was his son from another relationship [*3]and that they needed to care for him. According to the former partner, with the exception of approximately five days in January 2018, since such time the older child has consistently remained in her custody and she has been the primary caretaker for him. The younger child was born in April 2018 and, after the mother moved in with the father and the former partner in late August or early September 2018, the former partner became the primary caretaker for the younger child as well, providing for the day-to-day needs of both of the subject children, including feeding, bathing and clothing them, changing diapers and putting them to bed each night. She also obtained Medicaid insurance coverage for the subject children and took them to all medical and dental appointments.[FN8] The testimony of the mother and the father with respect to the role they played in the children's lives during this time was contradictory and inconsistent. To the degree that they were physically present with the children, they took little or no parental responsibility for their care and, for the vast majority of the children's lives, freely relinquished custody of the subject children to the former partner.[FN9] The former partner's testimony in this regard was corroborated by the testimony of the two eldest children of the father and the former partner — who resided in the home with the subject children during the relevant time period — indicating that the former partner was the primary caretaker for the subject children during that time. They further corroborated the former partner's accounts of verbal and physical abuse that she endured at the hands of the father — often in front of the children — the "toxic environment" that was created as a result thereof, and the mother's utter lack of parental involvement with the subject children. Based on the foregoing, and deferring to Family Court's factual findings and assessments of credibility, we find that Family Court appropriately determined that extraordinary circumstances had been established with respect to both the mother and the father (see Matter of Michael P. v Joyce Q., 191 AD3d at 1200-1203; Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1335-1336 [2020]; Matter of Mary D. v Ashley E., 158 AD3d at 1023-1024).
Turning to the best interests of the children, we find ample support in the record for Family Court's determination that such would be served by an award of sole legal and physical custody to the former partner. The subject children have been in the care and custody of the former partner for the majority of their young lives. Neither the mother nor the father has taken an active role in caring for the children, instead shifting their responsibility in this regard to the former partner, and the children have bonded with her and their half siblings, with whom they have also resided for a majority of their lives (compare Matter of Terry PP. v Domiyon PP., 184 AD3d at 916). Although the former partner was not presently [*4]employed and formerly relied upon the Social Security disability funds that she received from the father and her eldest son from that relationship, she testified that she recently had obtained Social Security disability for her arthritic condition. On the other hand, the father was presently incarcerated for his various alleged violations of the order of protection in favor of the former partner and has exhibited a propensity to engage in domestic violence with the former partner and their eldest children. Although the mother indicated that she was working one day per week at a fast-food restaurant and had her own two-bedroom apartment, she had only recently moved into said apartment with her two other children and the younger child, after being evicted for nonpayment of rent at her prior residence. Accordingly, given the parental bond formed between the subject children and the former partner, her demonstrated ability to provide for their day-to-day needs and overall well-being, we find ample evidence in the record for Family Court's custody determination (see Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1385 [2019]).
Family Court did not abuse its discretion in awarding supervised parenting time to the mother and the father. The record establishes that the father and the mother have demonstrated a willingness to contravene court orders and engage in conduct that not only reflects poorly on their ability to discharge their parental responsibilities, but also created real potential to endanger the safety of the children. For instance, despite the fact that competing custody petitions were pending before Family Court and the father had a stay-away order of protection issued against him in favor of the former partner based upon allegations of domestic assault, the mother and her eldest son nevertheless brazenly confronted the former partner on a public street, forcefully removed the younger child from her care and placed said child in a vehicle with the father while simultaneously attempting to physically remove the older child from the former partner's arms. Moreover, the father acknowledged being arrested three or four times during the pendency of the subject custody proceedings for violations of Family Court's order of protection in favor of the former partner and admitted to showing up at the older child's Head Start program, in contravention of Family Court's temporary custody order, demanding to see his child. Accordingly, we find that Family Court's imposition of supervised parenting time was an appropriate exercise of the court's broad discretion to develop a parenting time schedule that serves the best interests of the children (see Matter of Jeremy EE. v Stephanie EE., 191 AD3d 1111, 1112-1113 [2021]).[FN10]
Garry, P.J., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the appeal from the order entered November 4, 2019 is dismissed, without costs.
ORDERED that the order entered December 26, 2019 is affirmed, without costs[*5].



Footnotes

Footnote 1: The former partner alleged that, on March 23, 2019, she and the father argued over his desire to have the mother move into their home. As she started to walk away, the father attacked her from behind, grabbed her by the hair with both hands, ripping hair out of her head, and threw her onto a picnic table on the rear porch of the residence and began to choke her. The father did not let go until their eldest daughter intervened. The former partner then proceeded to enter the house, where the father again threw her to the ground, hit her in the face and proceeded to strike her about the body with a wooden stick, causing cuts and bruises.

Footnote 2: The family offense petition was granted on consent and a two-year order of protection entered against the father.

Footnote 3: Family Court did order a Family Ct Act § 1034 investigation based on the allegations of domestic violence in the household. Although the investigation was indicated against the mother, the father and the former partner for inadequate guardianship, with the caseworkers for Child Protective Services noting concerns about domestic violence and unstable housing, the case was nevertheless closed and no further action was apparently taken by the Broome County Department of Social Services.

Footnote 4: On June 10, 2019, the mother also filed a habeas corpus petition seeking to have the older child produced before Family Court and returned to her custody. Family Court did not specifically address that petition in the appealed-from order.

Footnote 5: In the amended petition, the former partner sought custody of the two youngest of her biological children with the father. Following the fact-finding hearing, Family Court granted the amended petition in that regard, and the father does not challenge that determination on this appeal.

Footnote 6: The November 2019 temporary order is "not a final order and, as such, is not appealable as of right" (Matter of Tina X. v John X., 134 AD3d 1174, 1175 [2015], citing Family Ct Act § 1112 [a]). The appeal from said order is therefore dismissed (see Matter of Dorsey v De'Loache, 150 AD3d 1420, 1421 [2017]).

Footnote 7: The father conceded at the fact-finding hearing that, given the lack of established paternity with respect to the younger child, he lacked standing in this regard and, therefore, his arguments on appeal are limited solely to Family Court's award of custody as to the older child.

Footnote 8: The mother also arranged for the former partner to be her proxy for purposes of receiving her women, infants and children benefits.

Footnote 9: The mother and the father would come and go from the residence as they pleased, often staying only one or two nights per week at the residence where they would sleep, shower and "smoke weed."

Footnote 10: To the extent that Family Court specifically provided in its custody and visitation order that the parties could petition Family Court to modify the parenting time schedule in the event that the father's sister was unwilling or unable to serve as a parenting time supervisor, under the unique circumstances of this case, we do not find that Family Court improperly delegated its authority over parenting time to the third party supervisor or the former partner (see Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1015 n [2015]; compare Matter of Staff v Gelunas, 143 AD3d 1077, 1079-1080 [2016]).