Matter of Charity K. v Sultani L. (2022 NY Slip Op 01085)





Matter of Charity K. v Sultani L.


2022 NY Slip Op 01085


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

533071
[*1]In the Matter of Charity K., Appellant,
v
Sultani L., Respondent. (And Another Related Proceeding.)

Calendar Date:January 10, 2022

Before:Egan Jr., J.P., Clark, Pritzker and Colangelo, JJ.

Lisa K. Miller, McGraw, for appellant.
Teresa C. Mulliken, Harpersfield, for respondent.
Susan B. McNeil, Brooktondale, attorney for the child.



Egan Jr., J.P.
Appeal from an order of the Family Court of Broome County (Rosa, J.), entered February 17, 2021, which, among other things, partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2014). The mother and the child traveled to South Carolina in 2017, and, when the father realized that the mother had no plans to return, he filed a custody petition in 2018. The child returned to New York in the summer of 2018 and began residing with the father. The father's custody petition then proceeded to a hearing that, given the parties' agreement that joint legal custody was appropriate, focused upon the question of physical placement. The end result was a December 2018 order in which Family Court awarded the parties joint legal custody of the child, with the father to have primary physical placement and the mother to have agreed-upon telephone and electronic contact and specified parenting time during the summer, school vacations and holidays.
The mother commenced the present violation and custody modification proceedings in June 2020, alleging that the father had willfully violated the provisions of the 2018 order by, among other things, depriving her of parenting time to which she was entitled and arguing that she should have primary physical placement of the child. Following a combined fact-finding hearing and an in camera interview with the child, Family Court issued an order in which it held that the father had violated the terms of the 2018 order by failing to allow the mother her specified parenting time in the summer of 2020. Family Court also determined that the mother had demonstrated a change in circumstances since the entry of the 2018 order warranting a reassessment of what custodial arrangement was in the best interests of the child. After assessing those interests, Family Court made limited alterations to the custodial arrangement but determined that the father should continue to have primary physical placement of the child. The mother appeals and argues, with the support of the appellate attorney for the child, that the record does not support continuing the child's physical placement with the father.
We disagree and affirm. "A parent seeking to modify a prior order of custody and visitation is required to demonstrate that a change in circumstances has occurred since entry thereof that then warrants the court engaging in an analysis as to the best interests of the child" (Matter of Naquan V. v Tia W., 172 AD3d 1467, 1468 [2019] [citations omitted]; accord Matter of Abigail V. v Jerry Z., 200 AD3d 1512, 1513 [2021]). There is no dispute that a change in circumstances occurred following the issuance of the 2018 order since, among other things, both parents had moved and the mother had become engaged and established a joint residence with [*2]her fiancÉ and their two children (see Matter of Anwar RR. v Robin RR., 196 AD3d 756, 757 [2021]; Matter of Maerz v Maerz, 165 AD3d 1404, 1405 [2018], lv denied 32 NY3d 914 [2019]). The question accordingly turns to what custodial arrangement is in the best interests of the child, which requires a review of factors such as the quality of the home environments of each parent, the need for stability in the child's life, the degree to which each parent has complied with the existing custodial arrangement and whether he or she will promote a positive relationship between the child and the other parent, as well as each parent's past performance and ability to provide for the child's physical, emotional and intellectual well-being (see Matter of Jahleel SS. v Chanel TT., ___ AD3d ___, ___, 2022 NY Slip Op 00232, *2 [2022]; Heather B. v Daniel B., 125 AD3d 1157, 1160 [2015]). Further, "[a]s Family Court was in a superior position to observe and assess witness testimony and demeanor during the fact-finding hearing, its credibility assessments and factual findings are accorded great deference, and its custodial determination will not be disturbed so long as it is supported by a sound and substantial basis in the record" (Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1414 [2021]; see Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1268 [2021]).
The hearing testimony reflected that the mother and the father were in similar economic straits, with both unemployed while they pursued various educational and career goals. Although the father had a series of temporary living arrangements after moving from the City of Binghamton, Broome County to the City of Syracuse, Onondaga County, he testified to having secured appropriate housing for the child by the time of the hearing. The mother, in contrast, testified that she was planning on moving into a larger residence with ample room for the child but had not yet done so.[FN1] The record otherwise gives no reason to believe that either parent was unable to appropriately care for the child. The record does, however, reflect that the child has thrived in the father's care and that, since their move to Syracuse, she has done well academically and benefitted from seeing her paternal grandmother and other relatives who live nearby. The father further explained that he had secured counseling for the child to cope with their move, as well as how the move itself was motivated by his commendable desire to engage in a treatment program for his longstanding alcohol abuse problem and maintain his sobriety. Moreover, we defer to Family Court's assessment that the mother had not presented credible evidence to establish her concerns about the father's illegal drug use and his disregard for the child's medical and educational needs.
Despite the foregoing proof that the father is a caring and capable parent, there remain concerns about his role as primary caregiver. For example, the father has failed to consult with the [*3]mother about developments in the child's life, including the move to Syracuse, and he has confronted the mother for sharing developments in her personal life with the child without telling him about those developments first. It is further clear that the father does not trust the mother — a distrust that Family Court found to be warranted given the mother's prior behavior in relocating to South Carolina with the child — and that such was the primary motivation for what Family Court determined was the father's willful refusal to allow the mother to exercise specified parenting time in the summer of 2020 after she failed to disclose her current address.[FN2] What the record does make clear, however, was that the father had not sought to cut the child off from the mother and that she enjoyed regular electronic contact with the child.
The mother and the appellate attorney for the child observe that the father's "intentional interference" with the mother's parenting time "raises a strong probability that [he] is unfit to act as the custodial parent" (Matter of William V. v Bridgett W., 182 AD3d 636, 637-638 [2020]; see Heather B. v Daniel B., 125 AD3d at 1160; Matter of Harlost v Carden, 124 AD3d 968, 968 [2015]). Nevertheless, Family Court found that the father had understandable, if not condonable, reasons for that interference, and that the mother had not shown how the child's best interests would be served by removing her from the stable, loving home environment provided by the father that the court specifically found him to be more capable of providing. Accordingly, under the circumstances presented, we perceive a sound and substantial basis in the record for Family Court's determination that the father should remain as the child's primary physical custodian (see Matter of William V. v Bridgett W., 182 AD3d at 637-638; Matter of Ross v Ross, 96 AD3d 856, 857-858 [2012]).
Finally, the attorney for the child did not appeal from Family Court's order and, as such, she is "barred from seeking affirmative relief not sought by the mother" (Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1293 [2019]; see Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 n [2020], lv dismissed 35 NY3d 1079 [2020]).
Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Family Court cast a skeptical eye on the mother's plans to move, noting that the "[m]other's intention to obtain more suitable housing is no guarantee it will happen." The attorney for the child advises us that the mother did obtain that housing after the hearing, but such is a development that is best explored in a new modification petition.

Footnote 2: The mother testified that she had not exercised any of the parenting time granted under the terms of the 2018 order between February 2019 and the time of the hearing in January 2021, but the parties dispute whether the father is responsible for her failure to do so. The mother testified that the father had refused to allow her to have visits with the child, while the father testified that he had no reason to deny the mother parenting time and that she had either failed to request it or, when she did, had not followed through by making arrangements for it to occur. Family Court did not make any findings on that factual dispute but, tellingly, the mother's violation petition only cited the father's refusal to grant her parenting time in the summer of 2020, and she offered no compelling explanation as to why she waited until that point to file that petition when she had not seen the child for well over a year (see e.g. Matter of William V. v Bridgett W., 182 AD3d 636, 638 [2020]).