Matter of Lisa F. v Thomas E. (2022 NY Slip Op 07272)

Matter of Lisa F. v Thomas E.

2022 NY Slip Op 07272

Decided on December 22, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

533749
[*1]In the Matter of Lisa F., Respondent,
v
Thomas E., Appellant. (And Another Related Proceeding.)

Calendar Date:November 16, 2022

Before:Egan Jr., J.P., Lynch, Aarons, Reynolds Fitzgerald and McShan, JJ.

Lisa K. Miller, McGraw, for appellant.
Tully Rinckey PLLC, Albany (Leslie A. Silva of counsel), for respondent.
Pamela B. Bleiwas, Ithaca, attorney for the child.

Lynch, J.
Appeal from an order of the Family Court of Broome County (M. Rita Connerton, J.), entered June 21, 2021, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent (hereinafter the father) is the sole living parent of the subject child (born in 2019) and was married to the child's mother from 2016 until her death in January 2020, when the child was only 4½ months old. The father has been incarcerated since the child's birth. Upon the mother's death, Broome County Child Protective Services (hereinafter CPS) placed the child with petitioner, the child's maternal great aunt by marriage, who had been caring for the child's maternal half brother for more than four years pursuant to a CPS placement.
In February 2020, petitioner commenced the first of these two Family Ct Act article 6 proceedings seeking custody of the child, citing the father's status as an incarcerated person, her custody of the child's half brother and the subject child's serious medical issues. That same day, Family Court granted petitioner temporary custody of the child and scheduled a hearing.
Thereafter, in August 2020, the father filed a document denominated "Affidavit in Support to Obtain Custody of Child" in which he asked that the child's paternal grandfather — Thomas D. (hereinafter the grandfather) — be awarded legal custody and guardianship of the child until the father's release from prison.[FN1] The grandfather then formally commenced the second of these proceedings seeking custody of the child himself. Following a joint fact-finding hearing on both petitions, the court awarded sole custody of the child to petitioner, with a schedule of telephone calls for the father — including dates and times during which petitioner was to be available to accept such calls — and dismissed the grandfather's petition. The father and, separately, the grandfather, appeal.
The grandfather did not perfect his appeal or otherwise participate. Consequently, his appeal is deemed dismissed (see 22 NYCRR 1250.10 [a]; Matter of Jihad N. [Devine N.], 180 AD3d 1164, 1165 n [2020]). Turning to the father's appeal, his arguments regarding the February 2020 temporary custody order are moot, for that order was superseded by the June 2021 custody order now on appeal, which was issued following an evidentiary hearing at which all parties were afforded a meaningful opportunity to participate (see Matter of Eckstein v Young, 176 AD3d 813, 814 [2d Dept 2019], lv denied 34 NY3d 911 [2020]; Matter of Miedema v Miedema, 144 AD3d 803, 804 [2d Dept 2016]; Matter of Posporelis v Posporelis, 41 AD3d 986, 988 [3d Dept 2007]).
With respect to the final custody order, we reject the father's assertion that petitioner did not establish extraordinary circumstances. "A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, [*2]abandonment, persistent neglect, unfitness, an extended disruption of custody or 'other like extraordinary circumstances'" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [3d Dept 2017] [citation omitted], quoting Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; accord Matter of Jared MM. v Mark KK., 205 AD3d 1084, 1086-1087 [3d Dept 2022]). Where no prior extraordinary circumstances finding has been made, "it remains the nonparent's burden to demonstrate the existence thereof and, thus, that he or she has standing to seek custody of another person's child" (Matter of Jared MM. v Mark KK., 205 AD3d at 1087; see Matter of Suarez v Williams, 26 NY3d 440, 446 [2015]; Matter of Tiffany W. v James X., 196 AD3d 787, 789 [3d Dept 2021]). Such inquiry necessitates "consideration of the 'cumulative effect of all issues present in a given case'" (Matter of Jared MM. v Mark KK., 205 AD3d at 1087, quoting Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1200 [3d Dept 2021], lvs denied 37 NY3d 901, 37 NY3d 902 [2021]), "includ[ing] the quality of the child[]'s relationship with the parents and the nonparent, whether the child[] ha[s] lived with the nonparent for any length of time and any neglect by the parents" (Matter of Shaver v Bolster, 155 AD3d 1368, 1369 [3d Dept 2017]).
Upon demonstrating the existence of extraordinary circumstances, "'Family Court may then proceed to the issue of whether an award of custody to the nonparent, rather than the parent, is in the child's best interests'" (Matter of Michael P. v Joyce Q., 191 AD3d at 1200, quoting Matter of Donna SS. v Amy TT., 149 AD3d at 1212-1213). The court's custody determination "'will not be disturbed so long as it is supported by a sound and substantial basis in the record'" (Matter of Charity K. v Sultani L., 202 AD3d 1346, 1347-1348 [3d Dept 2022], quoting Matter of Cecelia BB. v Frank CC., 200 AD3d 1411, 1414 [3d Dept 2021]).
The father asserts that Family Court placed undue emphasis on his incarceration as the basis for its extraordinary circumstances finding, arguing that such fact "did not necessarily equate to parental unfitness sufficient to supplant [his] custodial decision-making power." Although a parent's incarceration does not, standing alone, per se constitute an extraordinary circumstance (compare Matter of Washington v Stoker, 114 AD3d 1147, 1147 [4th Dept 2014], with Matter of Ratliff v Glanda, 263 AD2d 816, 817 [3d Dept 1999]), that is not the only factor at play here. As noted by Family Court, the mother, who had been the child's primary custodian for the first few months of her life, was deceased. Additionally, at the time of the hearing, the child had never met the father, had only met the grandfather on one occasion, had been in petitioner's custody since the mother's death, enjoyed a close relationship with petitioner and the older half brother, who was also in petitioner's care, and had serious medical issues that were being appropriately addressed by petitioner.[FN2] [*3]When considering the "combined effect of [all] factors" presented, we conclude that there is a sound and substantial basis in the record to support the extraordinary circumstances finding (Matter of Pettaway v Savage, 87 AD3d 796, 797-798 [3d Dept 2011], lv denied 18 NY3d 801 [2011]; see Matter of Banks v Banks, 285 AD2d 686, 688 [3d Dept 2001]).
Turning to the best interests inquiry, we readily agree with Family Court's finding that it was in the child's best interests to remain with petitioner, who had a proven track record in caring for the child's half sibling. Although the father and the grandfather may well love the child, the fact remains that, at the time of the hearing, neither of them had any sort of relationship with the child, nor had they provided any financial support whatsoever. The father was serving a prison sentence on an assault charge and was, in his estimation, scheduled to be released from custody no later than August 2022. As for his living and employment situation upon his release, the father testified that he had "a few different options" for work and would live with the child's paternal grandparents until he could find his own place. He planned to rely on the grandparents to provide childcare or would enroll the child in daycare if necessary.[FN3] However, when asked about what steps he would take to ensure the child's safety in light of her medical issues, the father did not have any concrete plans. Moreover, the father revealed a lack of understanding about the severity of the child's medical needs and demonstrated poor judgment in this regard. Despite the child's close relationship with petitioner, neither the father nor the grandfather would commit to maintaining that relationship.
Petitioner, by contrast, generally expressed more willingness to foster a relationship with the father and the grandfather. The child had been in petitioner's care for the majority of her life, referred to petitioner as "[m]ama," and enjoyed a close relationship with the half brother. At the time of the fact-finding hearing, the child had extensive medical issues — including a hole in her heart, a sensory processing disorder and swallowing issues — which required the coordination of a multitude of services. Petitioner was well-equipped to address the child's medical needs, engaged her in the therapies she required, and had a plan in place to continue to do so. Deferring to Family Court's credibility determinations and factual findings (see Matter of Charity K. v Sultani L., 202 AD3d at 1347; Matter of Cecelia BB. v Frank CC., 200 AD3d at 1414), we conclude that there is a sound and substantial basis in the record to support the award of custody to petitioner (see Matter of Sonya M. v Tabu N., 198 AD3d 1206, 1210 [3d Dept 2021], lv denied 38 NY3d 902 [2022]; Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1385 [3d Dept 2019]). The father's remaining contentions have been considered and found lacking in merit.
Egan Jr., J.P., Aarons, Reynolds [*4]Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: The father had previously filed an affidavit advocating for his aunt to have custody until his release from incarceration, but later abandoned that request.

Footnote 2: Although Family Court did not explicitly rely on these additional factors in its extraordinary circumstances finding, we are permitted to make such a determination in the first instance upon all relevant factors and the record is sufficiently developed to enable us to do so (see Matter of Mercado v Mercado, 64 AD3d 951, 953 [3d Dept 2009]).

Footnote 3: Although it was the grandfather, rather than the father, who filed a cross petition for custody of the child, the grandfather made clear that, if his petition was granted, he intended to transfer custody to the father upon his release from incarceration. As such, both the grandfather's and the father's ability to care for the child are relevant in the best interests inquiry.