Matter of Josiah Y. (Shanna V.) (2025 NY Slip Op 06571)

Matter of Josiah Y. (Shanna V.)

2025 NY Slip Op 06571

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CV-24-0881
[*1]In the Matter of Josiah Y. and Another, Abused and Neglected Children. Schenectady County Department of Social Services, Respondent; Shanna V., Appellant. (Proceeding No. 1.)
In the Matter of Cheryl U., Respondent,
Shanna ., Appellant, and Schenectady County Department of Social Services, Respondent, et al., Respondent. (Proceeding No. 2.)
In the Matter of Cheryl U., Respondent,
Shanna ., Appellant, and Schenectady County Department of Social Services, Respondent, et al., Respondent. (Proceeding No. 3.)

Calendar Date:October 7, 2025

Before:Garry, P.J., Lynch, Ceresia, Fisher and Mackey, JJ.

Sandra M. Colatosti, Albany, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Camille J. Siano Enders of counsel), for Schenectady County Department of Social Services, respondent.
Tsvetelina Gerova-Wilson, Albany, for Cheryl U., respondent.
Mitchell S. Kessler, Cohoes, attorney for the children.

Lynch, J.
Appeals from two orders of the Family Court of Schenectady County (Mark Blanchfield, J.), entered April 11, 2024, which, (1) in proceeding No. 1 pursuant to Family Ct Act article 10, denied respondent's motion to terminate placement of the subject children, and (2) granted petitioner's applications, in proceeding No. 2 and proceeding No. 3 pursuant to Family Ct Act article 6, for custody of the subject children.
Shanna V. (hereinafter the mother) is the mother of three children (born in 2003, 2007 and 2010). In February 2017, the Schenectady County Department of Social Services (hereinafter DSS) removed the children from the mother's care, following allegations that she beat the oldest child with an extension cord, causing severe welts and lacerations. DSS subsequently filed petitions against the mother, alleging that she abused and neglected the oldest child and derivatively abused and neglected the younger children. Criminal proceedings were also commenced against the mother in relation to the alleged abuse. Following a hearing, in April 2017, Family Court (Loyola, J.) returned the children to the mother's care, subject to a temporary order of protection requiring her to refrain from using excessive corporal punishment. Additionally, the mother was ordered to undergo a psychological evaluation, participate in foster care prevention, anger management and parenting classes, and cooperate with home visits from DSS. In May 2017, DSS filed its first violation petition, alleging that the mother refused to participate in an approved psychological evaluation, attend parenting classes and allow DSS personnel into her home.
In December 2017, the mother was convicted of assault in the third degree and endangering the welfare of a child and sentenced to a term of incarceration. The children were then placed in the care of petitioner Cheryl U., their maternal aunt (hereinafter the aunt), pursuant to an informal arrangement, which was subsequently memorialized in a temporary order of custody granting sole legal and primary physical custody to the aunt.[FN1] In light of the mother's convictions, DSS moved for summary judgment on its abuse/neglect petition, which Family Court (Blanchfield, J.) granted. The mother was released from jail in July 2018. In September 2018, Family Court altered the legal structure of the custodial arrangement, replacing the temporary custody order with a dispositional order of direct placement pursuant to Family Ct Act § 1055.[FN2] The order afforded the mother supervised parenting time contingent on her cooperation with DSS home visits and successful completion of an approved mental health evaluation and classes in foster care prevention, parenting and anger management. In March 2019, DSS filed its second violation petition against the mother, alleging that she had failed to comply with the aforementioned conditions. That petition was resolved with the mother's admission that she refused to allow DSS personnel into her home. In the meantime[*2], the aunt filed amended petitions for custody of the middle and youngest children. Following a combined custody and article 10 dispositional hearing in September 2020, the mother consented to a one-year order of suspended judgment with the conditions that the children remain in placement with the aunt and that the mother complete mandatory DSS directives, including an anger management class.[FN3] In September 2021, DSS filed a third violation petition, alleging that the mother still had not completed an anger management class. The petition was resolved upon the mother's consent to an extension of placement with the aunt until September 2022.
In September 2022, the aunt filed, for a third time, petitions for custody of the middle and youngest children. The mother responded by filing a motion to terminate placement pursuant to Family Ct Act § 1062. Following a multi-day fact-finding hearing and a Lincoln hearing with each of the children, Family Court, in a well-reasoned decision, concluded that the aunt had established extraordinary circumstances and the best interests of the children warranted an award of sole legal and primary physical custody to the aunt, with supervised parenting time to the mother. Accordingly, it denied the mother's motion to terminate placement. The mother appeals, and we affirm.[FN4]
The mother first contends that the aunt failed to make the threshold showing of extraordinary circumstances. "A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Tamara GG. v Danielle HH.,238 AD3d 1246, 1247 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Autumn B. v Jasmine A., 220 AD3d 1073, 1074 [3d Dept 2023]). "Such inquiry necessitates consideration of the cumulative effect of all issues present in a given case, including the quality of the child's relationship with the parent[ ] and the nonparent, whether the child has lived with the nonparent for any length of time and any neglect by the parent[ ]" (Matter of Candy II. v Kandice HH.,236 AD3d 1156, 1158 [3d Dept 2025] [internal quotation marks and citations omitted]; see Matter of Tiffany W. v James X.,196 AD3d 787, 789 [3d Dept 2021]).
Here, it is undisputed that, as a matter of law, the mother abused and neglected the oldest child and derivatively abused and neglected the younger children.[FN5] However, the mother argues that this incident — which occurred in 2017 — is too remote in time to be afforded significant consideration. We disagree. Initially, we note that this was not an isolated incident, as the youngest child also reported physical abuse at the hands of the mother. More importantly, the record reflects that the mother has failed to take responsibility for her actions or even acknowledge that she was the perpetrator of [*3]the abuse (see Phillip UU. v Amanda UU.,173 AD3d 1382, 1384 [3d Dept 2019]; Matter of Jackson v Euson,153 AD3d 1655, 1656 [4th Dept 2017]). During the initial investigation, the mother repeatedly claimed that the oldest child's injuries were self-inflicted and refused to allow DSS to interview the younger children without her being present. During a counseling session in June 2022, the mother acknowledged that she was incarcerated in relation to the oldest child's injuries but stopped short of admitting that she had caused those injuries. The mother's counselor testified that this was a "big step" but, in her own testimony, the mother unequivocally denied inflicting the injuries to the oldest child.
Further, the mother has refused to comply with DSS directives and programming aimed at reunifying her with the children, leading to the violation petitions (see Matter of Jackson v Euson, 153 AD3d at 1656). DSS caseworkers testified that the mother was uncooperative during several home visits, including one incident where her boyfriend answered the door and played a recording accusing them of "trespassing." She did not attend an anger management course for over three years, before finally enrolling in a course that was not approved by DSS. In late 2021 or early 2022, she began engaging in a DSS-approved "prevention program" which addressed anger management, among other things. However, a DSS caseworker testified that, as of March 2023, she had "[a]bsolutely not" completed an adequate anger management course. Similarly, the mother initially refused to participate in a mental health evaluation with a DSS-approved provider and sought her own evaluation, before eventually agreeing to an approved evaluation in March 2019. She did attend a parenting class but did not meaningfully participate and "periodically stepped out for unknown periods of time during sessions including one time where she actually ordered take out food." In addition to her uncooperative and noncompliant attitude, the mother blatantly lied to a caseworker about her pregnancy with a fourth child — a fact we find deeply troubling.
Significantly, the youngest child has lived with the aunt since the mother was incarcerated in 2017, and they have developed a strong bond (see Matter of Robert XX. v Susan YY., 202 AD3d 1389, 1390 [3d Dept 2022], lv denied 38 NY3d 907 [2022]). While the mother has had regular contact with the child, it has not progressed beyond supervised parenting time, largely due to the mother's failure to comply with DSS programming. On this record, we agree with Family Court that the mother's history of abuse/neglect and failure to comply with DSS orders in relation thereto, combined with her prolonged separation from the child and "other behavior evincing an utter indifference and irresponsibility relative to [her] parental role" constitutes extraordinary circumstances (Matter of Donald EE. v Cheyanne EE., 177 AD3d 1112, 1115 [3d Dept 2019], lvs denied 35 NY3d 903 [2020[*4]], 35 NY3d 905 [2020]; see Phillip UU. v Amanda UU.,173 AD3d at 1394; Matter of Jackson v Euson, 153 AD3d at 1656; Matter of Magana v Santos,70 AD3d 1208, 1209 [3d Dept 2010]). Accordingly, our inquiry turns to whether custody with the aunt is in the best interests of the youngest child (see Matter of Lisa F. v Thomas E.,211 AD3d 1367, 1369 [3d Dept 2022]).
"Factors to be considered in a best interests analysis include maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Nevaeh MM. [Sheri MM.-Charles MM.],158 AD3d 1001, 1003-1004 [3d Dept 2018] [internal quotation marks and citations omitted]; see Matter of Evelyn EE. v Jody CC.,222 AD3d 1294, 1297 [3d Dept 2023], lvs denied 41 NY3d 907 [2024], 41 NY3d 907 [2024], 41 NY3d 907 [2024]). Family Court's custody and parenting time determination "will not be disturbed so long as it is supported by a sound and substantial basis in the record" (Matter of Lisa F. v Thomas E.,211 AD3d at 1369 [internal quotation marks and citations omitted]; see Matter of Evelyn EE. v Jody CC.,222 AD3d at 1298).
Initially, we reiterate that the child has lived with the aunt since 2017. During that time, the aunt has enrolled the child in school, ensured she receives regular medical care and provided a safe and stable home environment. The mother has not made any significant decisions for the child since her removal, nor has she taken proactive steps to become more involved in the child's life.[FN6] We acknowledge that the mother's ability to communicate with the child directly was restricted by dispositional orders, but there was nothing preventing her from communicating with the aunt. Such communication, however, has been hindered by the mother's extreme distrust and hostility toward the aunt. The mother refused to give her phone number to the aunt and communicates only sporadically via email. Notwithstanding these challenges, the aunt has provided the mother with regular updates about the children and facilitated their attendance at all supervised visits. In view of the foregoing, we find a sound and substantial basis in the record for awarding the aunt sole legal and primary physical custody of the youngest child (see Matter of Evelyn EE, v Jody CC.,222 AD3d at 1297-1298; Matter of Autumn B. v Jasmine A., 220 AD3d at 1076; Matter of Sonya M. v Tabu N.,198 AD3d 1206, 1210 [3d Dept 2021], lv denied 38 NY3d 902 [2022]).
Finally, we discern no error in Family Court's decision to award only supervised parenting time to the mother. Such parenting time is appropriate when unsupervised parenting time "would be detrimental to the child's safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Christopher [*5]WW. v Avonna XX.,202 AD3d 1425, 1426 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of Robert C. v Katlyn D.,230 AD3d 1392, 1395 [3d Dept 2024]). While supervised visits have generally gone well, considering the mother's history of abuse and the fact that she has been untruthful and noncompliant with DSS, we agree that unsupervised parenting time could endanger the child's safety (see Matter of Jorge JJ. v Erica II.,191 AD3d 1188, 1191-1192 [3d Dept 2021]; Matter of Lynn X. v Donald X.,162 AD3d 1276, 1277 [3d Dept 2018]). To the extent the attorney for the child supports unsupervised visitation because the child is older and "at least [to] some degree able to protect herself if things go south," this statement acknowledges that the mother may still pose a risk if left unsupervised. Moreover, a child's ability to protect themself from further abuse is not a relevant or appropriate consideration in the best interests analysis.
In light of our determination, the mother's remaining contention regarding the denial of her Family Ct Act § 1062 motion to terminate placement has been rendered academic.
Garry, P.J., Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: The aunt also filed Family Ct Act article 6 petitions seeking custody of the middle and youngest children.

Footnote 2: As part of this arrangement, the aunt withdrew her custody petitions and DSS withdrew its violation petition.

Footnote 3: In light of this resolution, the aunt withdrew her amended custody petitions.

Footnote 4: The oldest child turned 18 prior to the filing of the instant petitions and motion and was not a subject of those filings. The middle child turned 18 during the pendency of this appeal. Therefore, the mother's appeal is now moot as to the middle child (see Matter of Jared D. [Ginger E.-Richard D.], 195 AD3d 1078, 1079 [3d Dept 2021]).

Footnote 5: In addition to the abuse/neglect finding based on the mother's criminal convictions, ample evidence of the abuse, including photographs, was introduced at the fact-finding hearing. 

Footnote 6: Moreover, the record suggests that the mother's judgment with respect to major decisions in the children's lives is questionable at best. For instance, a caseworker testified that, in fall 2017, upon being notified that the middle child had failed fourth grade, the mother enrolled him in fifth grade and ceased his Individualized Education Program.