Matter of Rasool QQ. v Rotisha PP.

2026 NY Slip Op 02896

May 7, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Rasool QQ., Appellant,

v

Rotisha PP., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)

In the Matter of Melissa OO., Respondent,

Rotisha PP., Respondent, and Rasool QQ., Appellant. (Proceeding No. 3.)

In the Matter of Melissa OO., Respondent,

Rasool QQ., Appellant. (Proceeding No. 4.) (And Other Related Proceedings.)

Decided and Entered:May 7, 2026

CV-23-0880

Calendar Date: March 26, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Veronica Reed, Schenectady, for appellant.

Alexandra J. Buckley, Albany, for Rotisha PP., respondent.

Sandra M. Colatosti, Albany, for Melissa OO., respondent.

Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.

[*1]

Reynolds Fitzgerald, J.

Appeal from an order of the Family Court of Schenectady County (Kevin Burke, J.), entered March 30, 2023, which, among other things, (1) dismissed petitioner's applications, in proceedings Nos. 1 and 2 pursuant to Family Ct Act article 6, for, among other things, custody of the parties' child, (2) granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, for custody of respondents' child and (3) granted petitioner's application, in proceeding No. 4 pursuant to Family Ct Act article 8, finding respondent to have committed a family offense and issued an order of protection.

Rasool QQ. (hereinafter the father) and Rotisha PP. (hereinafter the mother) are the parents of a child (born in 2016). Melissa OO. is the paternal grandmother (hereinafter the grandmother). The mother resided with the grandmother at the time of the child's birth. The mother left the grandmother's residence approximately two months after the child's birth, but the child continued to reside with the grandmother, with the mother taking the child periodically for one or two weeks at a time. During this time, the father was incarcerated. In March 2018, the father filed a petition against the mother seeking parenting time with the child upon his release from prison in October 2018. Beginning in December 2018, the father filed various custody and family offense petitions against the mother, alleging that her housing situation was unstable to the point where she sustained periods of homelessness, that she was mentally unstable and she verbally abused and threatened him. The mother filed a family offense petition against the father alleging constant harassment. Family Court temporarily granted the parents joint custody.FN1

In March 2021, the grandmother commenced proceeding No. 3, pursuant to Family Ct Act article 6, seeking custody of the child, alleging that the child had resided with her for most of the child's life, that the parents could not provide a stable or safe environment for him, and that the grandmother adequately met the child's medical, educational and social needs. The grandmother also filed two family offense petitions against the father. In April 2021, the mother was arrested for criminal mischief, and in May 2021 she was the victim of domestic violence perpetrated by her boyfriend. Family Court eventually issued "temporary order IV" in May 2021 granting the grandmother, the father and the mother joint legal custody of the child with the grandmother having primary physical placement. The court also issued the grandmother a temporary order of protection against the father. In August 2021, the father used corporal punishment to discipline the child. As a result of these incidents, the Schenectady County Department of Social Services (hereinafter DSS) filed neglect petitions against both the mother and the father.FN2 In late 2022, the father was incarcerated for endangering the welfare of a child as a result of the August 2021 corporal punishment [*2]incident. Following a protracted, multiday fact-finding hearing on all petitions, at which the mother consented to the relief in favor of the grandmother, Family Court granted the grandmother sole legal custody and primary physical placement of the child with parenting time to the father and the mother as mutually agreed upon. Simultaneously, the court issued a two-year order of protection in favor of the grandmother against the father and issued one-year orders of protection in favor of each parent against the other parent. The father appeals.FN3 The mother and the attorney for the child support affirmance of Family Court's orders.

"A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Jared MM. v Mark KK., 205 AD3d 1084, 1086-1087 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of John XX. v Cathy YY., 243 AD3d 1152, 1153 [3d Dept 2025]). "A grandparent, in particular, may make the requisite showing of extraordinary circumstances sufficient to confer upon him or her standing to seek custody by establishing that there has been an extended disruption of custody, which is defined, in relevant part, as a prolonged separation of the respondent parent and the child for at least 24 continuous months during which the parent voluntarily relinquished care and control of the child and the child resided in the household of the petitioner grandparent" (Matter of Ronda A. v Jennifer A., 224 AD3d 1130, 1131 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of Karen Q. v Christina R., 170 AD3d 1446, 1448 [3d Dept 2019]). "Examples of behaviors that may, in the aggregate, rise to the level of extraordinary circumstances include allowing the child to live in squalor, failing to address mental health issues, instability in the parent's housing or employment situation, the questionable use of corporal punishment as a means of discipline and other similar behaviors that reflect the parent's overall pattern of placing his or her own interests and personal relationships ahead of the child" (Matter of Philip UU. v Amanda UU., 173 AD3d 1382, 1383-1384 [3d Dept 2019] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of John XX. v Cathy YY., 243 AD3d at 1153). The nonparent bears the burden of establishing that extraordinary circumstances exist, and, if met, the inquiry shifts to a best interests analysis (see Matter of Candy II. v Kandice HH., 236 AD3d 1156, 1158 [3d Dept 2025]; Matter of Lisa F. v Thomas E., 211 AD3d 1367, 1368-1369 [3d Dept 2022]). "The court's custody determination will not be disturbed so long as it is supported by a sound and substantial basis in the record" (Matter of Lisa F. v Thomas E., 211 AD3d at 1369 [internal quotation marks [*3]and citations omitted]; see Matter of Amber B. v Scott C., 207 AD3d 847, 848 [3d Dept 2022]).

The father contends that Family Court erred in finding extraordinary circumstances. We disagree. The mother testified that while she was pregnant with the child, she and the father were arrested after the police found a gun in the father's car. At the time of the child's birth, the mother resided with the grandmother. Approximately two months later, the mother left the grandmother's residence and, thereafter, had short-term housing in various places. However, the mother testified that during that period the child continued to live with the grandmother and that she would periodically take the child and then return him to the grandmother's residence. The mother further testified that while she occasionally accompanied the grandmother to the child's doctor appointments, the grandmother was and is primarily responsible for scheduling and taking the child to his medical appointments. The mother conceded that she has had no interaction with the child's school and does not financially support the child.

The father testified that for the first two years of the child's life, he was incarcerated and that he has a "pretty long [criminal] record." The father conceded that he has multiple untreated mental health diagnoses and acknowledged that while these petitions were pending, he was arrested twice for fighting with third parties. He also acknowledged that he was convicted of endangering the welfare of a child for using corporal punishment to discipline the child in August 2021, and blames his conviction on "an unfair jury trial," rather than accepting responsibility for his conduct. The father stated that he does not know where the child goes to school and has not been involved in his schooling. He also conceded that he refused to participate with DSS to coordinate supervised parenting time and did not visit the child for over one year. The father further alleged that DSS is lying about him, that he believes most people, including the mother, are evil, and that the grandmother is "totally" evil.

A DSS caseworker testified that he has had significant involvement with this family since 2018. His first involvement consisted of concerns pertaining to the mother smoking marihuana, lacking stability and housing and that she was indicated after these concerns were confirmed. The caseworker became involved with the father upon his release from prison. The caseworker testified that the father declined to sign releases for him to speak to his clinician and to obtain medical information regarding his mental illness. The caseworker further stated that the father's personality prevents him from forming relationships with important people in both his and the child's life, including the child's pediatrician's office, the forensic psychologist's office and the father's housing personnel — all of whom, according to the caseworker's testimony, share the view that the father is aggressive[*4], and, as a result, they are uncomfortable working with him. The caseworker stated that in the past, DSS had not filed neglect petitions against the mother or the father because the grandmother is a stable force in the child's life, and they are extremely comfortable with the child living with the grandmother. Despite the grandmother's continued involvement in the child's life, DSS recently felt compelled to file a neglect petition against the father for his corporal punishment of the child, inadequate guardianship for failing to follow through with the child's speech evaluation and enrolling the child in school and for fighting between the parents. DSS also filed a neglect petition against the mother due to her continued instability and recent domestic violence between her and her boyfriend.

The grandmother testified that she retired in 2015 and has raised the child since his birth in 2016. The grandmother stated that the mother stayed with her when the child was born, and after the mother left her residence the child continued to reside with her 90% of the time. She testified that she has cooked, shopped, bathed, financially supported the child, has obtained all of his medical care, enrolled the child in school and interacts with the child's school and teachers, and took the child for a speech evaluation during the pendency of these custody proceedings. She stated that neither parent financially supports the child nor has either parent emotionally or physically supported the child.

A finding of extraordinary circumstances is supported by a sound and substantial basis in the record because the mother has failed to provide a stable home for the child, the father suffers from chronic mental illness, a lengthy criminal history and has not provided educationally for the child, all of which negatively impact the child, and the child has resided with the grandmother most of his life (see Matter of Ronda A. v Jennifer A., 224 AD3d at 1131-1132; Matter of Jared MM. v Mark KK., 205 AD3d at 1089; Matter of Philip UU. v Amanda UU., 173 AD3d at 1385). Turning then to the child's best interests, and according deference to Family Court's factual findings and credibility determinations, there is ample proof that the grandmother has had custody of the child for most of the child's life, and has been acting as if she was a parent with primary physical custody. Moreover, she has been doing this in a caring, supportive manner, and has had little, if any, help in doing so from either parent. As such, Family Court's determination that it is in the child's best interests for the grandmother to be awarded custody is supported by a sound and substantial basis (see Matter of Tamika B. v Pamela C., 187 AD3d 1332, 1337 [3d Dept 2020]; Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1105 [3d Dept 2015]).

Next, we turn to the father's argument that Family Court erred in awarding him parenting time with the child as mutually agreed upon, because he has an acrimonious relationship [*5]with the grandmother. "Family Court has broad discretion to develop a parenting time schedule in the best interests of the child, and we will not disturb such determination unless it lacks a sound and substantial basis in the record" (Matter of Henry CC. v Antoinette DD., 222 AD3d 1231, 1234 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Tina X. v Thomas Y., 233 AD3d 1272, 1275 [3d Dept 2024]). Although the record demonstrates that the father and the grandmother have a strained relationship, there is ample evidence that the grandmother is willing to work with the father to ensure that he has parenting time in compliance with the court's directives. Additionally, the father's history of incarceration throughout the child's young life — especially at the conclusion of the fact-finding hearing — renders a structured schedule inappropriate. Based on the record before us, there is a sound and substantial basis to support Family Court's parenting time determination (see Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1454 [3d Dept 2021]; Matter of Bonnie AA. v Kiya DD., 186 AD3d 1784, 1788 [3d Dept 2020], lv dismissed & denied 36 NY3d 933 [2020]).

The father also seeks dismissal of the two-year order of protection in favor of the grandmother. Since the order of protection expired by its own terms on March 29, 2025, and the father does not challenge the family offense findings underlying such order, this argument is moot (see Matter of Tina X. v Thomas Y., 233 AD3d at 1276-1277; Matter of Kristine Z. v Anthony C., 43 AD3d 1284, 1284-1285 [4th Dept 2007], lv denied 10 NY3d 705 [2008]).

Aarons, J.P., Pritzker, Fisher and McShan, JJ., concur.

ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1

Family Court issued several temporary custody orders and temporary orders of protection throughout these proceedings.

Footnote 2

The neglect petitions were withdrawn after Family Court rendered its March 2023 order granting the grandmother sole legal custody and primary physical placement of the child.

Footnote 3

During the pendency of the appeal the father was again incarcerated in 2024 and was released in January 2026.