Matter of Jaylin XX. (Jamie YY.) (2023 NY Slip Op 02358)

Matter of Jaylin XX. (Jamie YY.)

2023 NY Slip Op 02358

Decided on May 4, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 4, 2023

534620 535158
[*1]In the Matter of Jaylin XX., Alleged to be a Neglected Child. Delaware County Department of Social Services, Respondent; Jamie YY., Appellant. (And Another Related Proceeding.)

Calendar Date:March 29, 2023

Before:Egan Jr., J.P., Lynch, Aarons, Fisher and McShan, JJ.

Teresa C. Mulliken, Harpersfield, for appellant.
Amy B. Merklen, County Attorney, Delhi, for respondent.
Donna C. Chin, Niverville, attorney for the child.

Lynch, J.
Appeals (1) from an order of the Family Court of Delaware County (Gary A. Rosa, J.), entered December 7, 2021, which, in two proceedings pursuant to Family Ct Act article 10, continued the temporary removal of the subject child from respondents' custody, and (2) from an order of said court, entered April 1, 2022, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondents Jamie YY. (hereinafter the mother) and Jason XX. (hereinafter the father) are the parents of the subject child (born in 2008). In June 2021, petitioner commenced a Family Ct Act article 10 proceeding alleging, among other things, that the mother had committed educational neglect by failing to ensure the child's attendance in school. Family Court (Northrup Jr., J.) issued an ex-parte temporary order of protection requiring the mother to facilitate the child's attendance in school and participation in services provided by the Delaware County Mental Health Clinic until successfully discharged. The court subsequently issued another temporary order of protection adding a directive that the mother ensure that the child meet with an assigned caseworker.
A few months later, in October 2021, petitioner filed a prepetition application for temporary removal of the child (see Family Ct Act § 1022), naming the mother and the father as respondents.[FN1] The application alleged, among other things, that since entry of the temporary orders of protection, the mother had failed to cooperate with petitioner and to ensure the child's attendance in school. It also expressed concern that the mother may have been using methamphetamine. Family Court (Rosa, J.) granted the application and directed the temporary removal of the child. Petitioner thereafter commenced the instant neglect proceeding alleging, among other things, that the mother had refused to participate in preventative services and had failed to address the child's mental health and educational needs. In December 2021, the court continued the child's removal pending resolution of the petitions [FN2] and, following a fact-finding hearing, found that the mother neglected the child insofar as she had "ignore[d] the child's mental and emotional condition and failed to supply the child with necessary education even though [she] was offered reasonable means to do so." Following a dispositional hearing, Family Court issued a dispositional order in April 2022 continuing the child's removal and placing the mother under supervision upon certain terms and conditions. The mother appeals from the December 2021 removal order and the April 2022 dispositional order.
The mother's appeal from the December 2021 removal order must be dismissed. Any challenge to this order was rendered moot by entry of the April 2022 dispositional order and the mootness exception does not apply (see Matter of Emmanuel J. [Maximus L.], 149 AD3d 1292, 1296 n 2 [3d Dept 2017]; Matter of Karrie[*2]-Ann ZZ. [Tammy ZZ.], 132 AD3d 1180, 1181 [3d Dept 2015]).[FN3] As for the mother's appeal from the April 2022 dispositional order, we disagree with her contention — joined by the attorney for the child — that Family Court's neglect finding is not supported by a sound and substantial basis in the record. To establish its neglect claim, petitioner was required to demonstrate, by a preponderance of the evidence, that the mother "failed to exercise a minimum degree of care and that such failure . . . caused the child's 'physical, mental or emotional condition [to be] impaired or [to be] in imminent danger of becoming impaired' " (Matter of Leo RR. [Joshua RR.], 213 AD3d 1190, 1191 [3d Dept 2023], quoting Family Ct Act § 1012 [f] [i]). A neglect finding may be premised upon a parent's failure to supply a child with an adequate education or medical care, so long as the child has been impaired thereby or is in imminent danger of so becoming (see Family Ct Act § 1012 [f] [i] [A]).
The testimony from the fact-finding hearing established that the child began struggling in school during the 2020-2021 academic year when remote learning was implemented in response to the COVID-19 pandemic. The mother noted that the child was depressed and struggling at that time, refusing to attend virtual classes or to do her homework. The child had 30 unexcused absences [FN4] and 38 late arrivals as of March 2021, resulting in failing grades. The mother was adamant that she had taken steps to remedy the situation, including by monitoring the child to make sure she had her computer open and was logged on to her virtual classes, helping her with her homework and seeking guidance from a school counselor. However, these efforts proved unfruitful, as the child still "refused to get up and get dressed and go to school" after in-person classes resumed. The mother testified that she could not physically force the child to go to school, explaining that the child would throw herself against the door and have a crying fit.
Although the mother maintained that she had taken appropriate steps to address these concerns — including by getting the child on a waitlist for a "Big Buddy" program and obtaining paperwork to potentially homeschool her — she acknowledged that she declined to accept preventive services offered by petitioner in this respect, maintaining that she "didn't need them." She subsequently testified that she "would have taken [the] services if [the caseworker had] approached [her] a different way." Moreover, despite several recommendations from one of petitioner's caseworkers to enroll the child in mental health counseling, the mother acknowledged that she refused to do so because she did not feel it was necessary. A caseworker for petitioner confirmed as much during the hearing, explaining that the mother refused preventive services directed at ameliorating the issues and was not receptive to her help. Notably, the mother revealed that, since being removed from her care, the child [*3]had started attending school, had excellent grades and had made friends. In addition to the foregoing, there was testimony that the mother had refused to take a drug test despite a concern that she was using drugs. The mother, for her part, acknowledged that she refused to submit to a drug test on the day of the hearing and maintained that, although she had tested positive for methamphetamine a few days before, the result was incorrect. She also acknowledged that her boyfriend, with whom she lived, had recently tested positive for amphetamines. When pressed on this line of questioning, the mother was adamant that "drug tests have nothing to do with [the child]," referring to the issue as "silly."
As for Family Court's neglect finding, the record demonstrates "a significant, unexcused absentee rate that ha[d] a detrimental effect on the child's education," as evidenced by the child's failing grades (Matter of Regina HH. [Lenore HH.], 79 AD3d 1205, 1205 [3d Dept 2010] [internal quotation marks and citation omitted]). Although the mother testified that she had taken steps to address the child's truancy, the record nevertheless demonstrates that she refused preventive services in this regard and was unwilling to put the needs of the child above her disdain for the caseworker. She also refused recommendations to enroll the child in mental health counseling despite being aware that the child was depressed and minimized the issue of potential drug use, failing to recognize the relevance of questioning in that respect. Notably, the mother conceded during the fact-finding hearing that her refusal to engage in services contributed to the child's failing grades and continued emotional outbursts in her home. When deferring to Family Court's factual findings and credibility determinations, we conclude that there is a sound and substantial basis in the record to sustain the neglect finding (see id.; Matter of Cheyenne Q. [Charles Q.], 196 AD3d 747, 748-749 [3d Dept 2021], lv denied 37 NY3d 915 [2021]).
We are also unpersuaded by the mother's challenge to the dispositional order continuing the child's removal. "A dispositional order in a neglect proceeding 'must reflect a resolution consistent with the best interests of the child[] after consideration of all relevant facts and circumstances, and must be supported by a sound and substantial basis in the record' " (Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d 1076, 1079-1080 [3d Dept 2022], lv denied 38 NY3d 912 [2022], quoting Matter of Hayley QQ. [Heather RR.], 176 AD3d 1343, 1346 [3d Dept 2019]). The testimony at the dispositional hearing established that, after being removed from the home, the child started consistently attending school, was receiving "[e]xcellent" grades and was starting to "open[] up more." Although the child had been discharged from a county-based mental health program for refusing to open up or talk, the family member with whom the child was residing in kinship foster care was actively [*4]encouraging her to go back. By contrast, the testimony at the dispositional hearing revealed that the mother was living with an individual who had mental health issues and had tested positive for methamphetamine. The mother acknowledged to a caseworker that this living situation was not appropriate for the child. There was also testimony that the mother tested positive for methamphetamines in January and March of 2022, but persisted in her claim that there "had to be some kind of mistake." We are mindful that the AFC represented that the child desired to return to the mother's care; however, given the forgoing evidence, we conclude that Family Court's finding that continued removal was in the child's best interests has a sound and substantial basis in the record (see Matter of Ja'Sire FF. [Jalyssa GG.], 206 AD3d at 1080; Matter of Alexis AA. [John AA.], 97 AD3d 927, 929 [3d Dept 2012]; Matter of Keaghn Y. [Heaven Z.], 84 AD3d 1478, 1479 [3d Dept 2011]).
Egan Jr., J.P., Aarons, Fisher and McShan, JJ., concur.
ORDERED that the appeal from the order entered December 7, 2021 is dismissed, as moot, without costs.
ORDERED that the order entered April 1, 2022 is affirmed, without costs.

Footnotes

Footnote 1: The father was incarcerated at the time.
Footnote 2: The June 2021 neglect petition was subsequently withdrawn. The father consented to a finding of educational neglect with the continued placement of the child in petitioner's custody and a one-year order of supervision.

Footnote 3: The attorney for the child (hereinafter AFC) also challenges the December 2021 removal order, taking the position that Family Court erred by directing the child's removal because petitioner did not make reasonable efforts to prevent or eliminate the circumstances necessitating such action. However, the mother does not make this argument in her brief and the AFC did not appeal from this order. In these circumstances, the AFC "is barred from seeking affirmative relief not sought by the mother" (Matter of Charity K. v Sultani L., 202 AD3d 1346, 1349 [3d Dept 2022] [internal quotation marks and citation omitted]).

Footnote 4: The mother testified that this number was incorrect, as the school would mark the child absent if she logged on late. Nevertheless, she conceded that the child had a significant absentee rate and the exhibits contained in the record confirm as much.